STATE ex rel. CITY OF ST. PAUL v. DISTRICT COURT OF RAMSEY
COUNTY and Another.[1]

October 16, 1903.

Nos. 13,563—(6).

**Assessment for Local Improvement—Notice to Owners.**

> Before the board of public works of the city of St. Paul can determine and designate the district within which property will be specially benefited by a proposed local improvement (charter 1900, c. 6, tit. 3, § 7), the notice to property owners provided for in section 25 of the same title must be given.   Such determination and designation is a part of the "proceeding to make an assessment."

Writ of certiorari from the supreme court, on the relation of the city of St. Paul, to review a judgment of the district court for Ramsey county, Brill, J.   Writ dismissed.

*James C. Michael* and *George R. O'Reilly,* for petitioner.
*Alexander E. Horn* and *William Louis Kelly, Jr.,* for respondents.

COLLINS, J.

This cause is here on certiorari to review the decree of the district court whereby the application of the city of St. Paul for judgment against the property of the respondents on account of a local improvement assessment, made to meet the cost of paving certain streets, was denied.

[1]Reported in 96 N. W. 737.

The real question is whether, under the "home rule" charter of the city, adopted in the year 1900, the board of public works is required to give notice prescribed by section 25, tit. 3, c. 6, to interested property owners, of the meeting held, in accordance with section 7, to determine and define the district within which property will be specially benefited by the improvement, and upon which the assessment shall be laid.

Section 7 was not in any charter of the city prior to the adoption of that now under consideration. It was inserted in 1900, while other sections somewhat at variance were adopted from other charters without alteration. It provides that, after a contract for making an improvement, for which an assessment is to be made, is awarded, the board of public works shall determine the district within which property will be specially benefited thereby, and shall then compute the total valuation of all of the property within the district subject to assessment for the improvement, according to the last assessed valuation of such property for the purposes of general taxation, and shall also compute the cost of making the improvement, together with the cost of the proceedings for the collection of the assessment. If such cost shall exceed twenty-five per cent. of the total assessed valuation, the board shall then certify the amount of such excess to the common council, which council shall thereupon either make provision for the payment of the amount of such excess out of the general fund of the city, or shall cancel all proceedings theretofore had relating to the making of the improvement. If the council shall direct the payment of such excess out of the general fund, then the board shall proceed to assess the balance of the cost of the improvement, together with the cost of collection, against the property within the district.

Section 7 contains no reference to the giving of notice that a meeting of the board will be held at which the assessment district is to be carved out and determined. Evidently the purpose of this section is to protect property owners within the district from an assessment in excess of twenty-five per cent. of the taxable valuation of their property, and, in order to ascertain whether the assessment will be in excess of this percentage, it is absolutely essential that the board shall first be informed as to the cost of the improvement, and then that the boundaries of the assessment district, and the property over which this

cost is to be spread, shall also be determined upon with accuracy and exactness. In no other way can the board or the council decide whether the improvement is one in which the latter body should aid by payment out of the general fund, or one where the cost is to be wholly borne by the property owners within the district because the cost of the same will not exceed twenty-five per cent. of the total assessed valuation. The necessity of preciseness and accuracy by the board when ascertaining these facts for submission to the council, so that it may act in accordance with the charter provisions, is evident, and will again be referred to.

Section 25 has been a part of the charter for many years, and, so far as here material, is in the following language:

> "Before proceeding to make an assessment for any improvement mentioned in section 23 of this title [which includes paving of streets] said board * * * shall give six days' notice by one publication in the official paper of said city of the time and place of their meeting, for the purpose of making such assessment, in which notice they shall specify what such assessment is to be for and the amount to be assessed. * * * All persons interested in any such assessment shall have the right to be present and be heard either in person or by counsel, and the said board may in their discretion receive any legal evidence and may adjourn, if necessary, from time to time, and place to place."

If, then, the designation of the specially benefited district over which the entire cost of the improvement and the cost of collection is to be assessed and levied is a part of the assessment proceedings, within the meaning of section 25, if it is one of the steps which finally result in levying upon each tract of land the amount which its owner is required to pay on account of the improvement, it is obvious that the provision as to the giving of notice must be complied with before the district to be assessed can be determined and designated. If, upon the other hand, the establishment of the district to be benefited by the improvement and upon or over which the cost is to be assessed and levied is no part of the assessment proceedings, section twenty-five is not applicable, and notice of the meeting is not required.

Under the provisions in a former charter (Sp. Laws 1887, p. 335, c. 7, subc. 7, tit. 1, §§ 7, 8) it was held that the notice specified in section 8 must be given to interested parties in advance of any hearing, defining and determining a limited district as embracing the property upon which the assessment for benefits is to to be made; that without such a notice and a hearing the board was not authorized to decide upon what district or property the burden should be imposed, and that a predetermination by the board fixing or limiting the assessment district was prejudicial to the rights of those owning property within that district. State v. Otis, 53 Minn. 318, 55 N. W. 143.

It is true that the new section 7 makes no provision for notice, and that section 8 is altogether changed; but section 25 expressly provides that, before proceeding to make an assessment, notice must be given in the prescribed way. And such a provision is in accordance with the law as it had existed for many years. But, if this notice need not be given until the board is ready to determine just what amount or proportion of the whole is to be charged to each lot within the assessment district—a fact ascertained by mere mathematical calculation—the matter in which the property owner is principally and vitally interested, the laying out of the district, is determined in advance, and he is without a remedy, unless he can be heard when nothing is to be done but the clerical work; a hearing which, if allowed, may entirely change and disarrange the assessment district as previously fixed and determined. At this time the question whether the expense shall be borne by the district itself, or in part by the city, has been passed upon by the city council, and the contract finally entered into. In fact, this formal levy or assessment might be after the work itself had been wholly done. If the property owner could then be allowed to contest the determination of the board as to the boundaries of the district, and through such a contest could change its limits or boundaries, making it either larger or smaller, the entire nature of the proceeding might be altered.

In other words, with such a method of procedure we might have a case in which the city had been compelled by the action of the board and of the council, the act of the latter body predicated upon the certificate or report of the former, to defray a portion of the cost of the improvement, and then, through a change of the boundaries of the dis-

trict upon a hearing involving the clerical work only, have a case where the entire cost should have been borne by the property holders in the district, as finally fixed, and no portion of it by the city. Or the opposite of these conditions might be found. This would lead to confusion, and a positive wrong either to the city or to the property owners. The orderly and only safe way to proceed is to give the notice provided for in section 25, prior to defining the boundaries of the assessment district, and by such a notice and a hearing determine and designate, in advance of the action of the council, the property to be benefited and assessed with exactness and certainty. This determination is quite as much a part of the assessment as the final act of declaring the amount to be levied upon each lot, and is of more consequence to the property owners.

We quite agree with the court below that, in view of the fact that before the enactment of section 7 an assessment district could not be designated without notice, it ought not to be inferred that notice is not now required. So that, unless it is very clear that it was not the intention of the framers of the charter to confer the benefit of notice upon the property owners, their right to have notice and to be heard upon one of the most material questions involved in the assessment proceeding—a right which they had always theretofore enjoyed under former charter provisions—should not be taken from them. There are certain provisions in section 22, tit. 3, c. 6, which cannot easily be reconciled with the provisions of section 7, but they are not involved here, and need no consideration.

The writ of certiorari is dismissed.