STATE ex rel. CHARLES EATON and Others v. DISTRICT COURT OF
RAMSEY COUNTY and Another.[1]

September 1, 1905.

Nos. 14,367—(14).

**Local Improvement—Reassessment.**

Application for judgment having been denied in an original proceeding
for a local improvement, the board of public works of the city of St. Paul
was authorized to make a reassessment, and the first step required was
to give notice under section 25, c. 6, tit. 3, City Charter, of a meeting to
determine the new assessment district and to adjust the assessment upon
the property benefited.

**Notice of Meeting.**

The notices in this instance were sufficient, and the holding of two
separate meetings for each of such purposes and the issuing of two notices
was a substantial compliance with the charter. State v. District Court of
Ramsey County, supra, page 70.

**Assessment District.**

In making such reassessment, the board of public works had authority
under section 57, c. 6, tit. 3, City Charter, to establish an entirely new
district and to include therein all property benefited by the improvement,
whether embraced within the original district or not.

**Arbitrary Assessment—Objection.**

In this case a portion of the owners assessed in the original proceedings
paid up the assessment without contesting its validity, while others
appealed to the court, and application for judgment was denied upon
jurisdictional grounds, whereupon the board of public works proceeded
to make a reassessment, and gave notice of meetings to determine the
assessment district and to adjust the assessment according to the benefits.
The district so established excluded all the property upon which the
original assessment had been paid, but included all property upon which
the original assessment had not been paid, and also additional property
not originally assessed.

*Held*, it appearing that the board assessed the property upon which the
original assessment had not been paid at $1.25 per front foot less than the
property originally paid without regard to benefits, and levied the amount

[1] Reported in 104 N. W. 553.

of the difference upon new additional property, an arbitrary rule of assessment was adopted, and the board did not proceed in the exercise of its reasonable judgment, and the assessment was void.

*Held*, the objection to the assessment on that ground was within the right of a property owner who had paid the original assessment, and who seasonably interposed objection in the reassessment proceedings.

*Held*, further, that in the adjustment of the assessment upon the various classes of property included in the new district, no substantial errors occurred.

Writ of certiorari issued from the supreme court upon relation of Charles Eaton and others, directed to the district court for Ramsey county and Honorable Olin B. Lewis one of the judges thereof, to review a judgment of that court entered over the objections of relators, upon a reassessment by the board of public works of the city of St. Paul for the paving of Chestnut street in that city. Judgment reversed.

The following map of a portion of the assessment district illustrates the contentions of appellants:

*B. H. Schriber, Ambrose Tighe, Henry C. James,* and *Horace E. Bigelow,* for relators.

*J. C. Michael* and *G. R. O'Reilly,* for respondents.

LEWIS, J.

In 1899, under the former city charter, the city council of St. Paul instituted proceedings for the paving of Chestnut street, from Seventh street to the levee on the Mississippi river, and work was completed during that year. To meet the expenses of the improvement an assessment was levied by the board of public works of $5.18 per front foot on the abutting property, amounting in the aggregate to $15,696.-44. Owners of 929 feet abutting on the street of the improvement paid the assessment, and the owners of the remaining 2,101.2 feet front objected, and the district court denied the application of the city for judgment against their property on the ground that the board of public works had no jurisdiction to make the assessment, because of a failure to hold the essential meeting as advertised.

A second attempt was made to reassess for the amount of the assessment remaining unpaid, which was also found to be invalid, and thereupon, in 1903, a new proceeding to reassess under the present charter was begun by the board of public works by the issuing of a notice dated May 5, 1903, to the effect that the board of public works would meet May 14, 1903, to determine the district within which property would be specially benefited by the improvement, in accordance with the final order of the common council approved May 29, 1899, to ascertain what property should be assessed therefor, notifying all persons interested to be present at the specified time and place. Pursuant to this notice, May 14, 1903, a meeting of the board was held, at which time it was determined that the property specially benefited by the improvement was all the abutting property on Chestnut street between Seventh street and the levee, and also certain lots lying north of the railroad right of way and south of Seventh street, describing the property. December 4 following, the board of public works caused to be published in the official paper a notice to the effect that the board would meet on December 21 to make a reassessment of benefits, costs, and expenses arising from the improvement to Chestnut street,

which notice contained a description of the same property as set forth in the preceding notice, and, further, that the property was specially benefited in the aggregate amount of $10,923.97. Pursuant to this notice, on December 21, the board completed the reassessment, and the assessment rolls so made up contained a list of the property on which the original assessment was paid, and the additional list of property, which included not only the property fronting upon Chestnut street upon which the original assessment was not paid, but also certain additional lots fronting upon cross streets. Thereupon application was made for judgment, which was granted, and the matter was brought to this court upon a writ of certiorari to test the validity of the proceedings.

The subject thus presented may be disposed of under three propositions:

1. In making the reassessment, did the board of public works comply with the charter provisions in respect to meetings and notice?

2. Did the board exceed its authority by establishing a new assessment district in the reassessment proceedings?

3. If the board was within its charter powers in establishing a new assessment district, in making such reassessment, did it act upon a demonstrable mistake of fact, and apply an illegal principle or an erroneous rule of law (a) in not taking into account the relative value and adaptability of the respective properties involved, and (b) by excluding that portion of the original district upon which the assessment had been paid?

1. A notice of the meeting to determine the assessment district under date of May 5, 1903, was the first step taken by the board of public works in the reassessment proceedings. The record shows that in pursuance thereof a meeting of the board was held May 14, at which time the board determined that the property specially benefited by the improvement under consideration was

All the abutting property on Chestnut street between Seventh street and the levee; also all the following described lots lying north of the railroad right of way and south of Seventh street, towit.

Then follows a description of the property which was considered to be specially benefited, and which comprised the assessment district. The next step in the proceedings was to give a notice that December 21 the reassessment would be made, setting out in full a description of the property to be so assessed, and the stipulation of facts reads:

> On the 21st of December, 1903, the board of public works completed the reassessment in these proceedings, and a copy of the assessment is hereto annexed.

In State v. District Court of Ramsey County, 90 Minn. 294, 96 N. W. 737, it was held to be a necessary step in the original assessment proceedings (under section 7), after the contract is let and before it is executed, to give notice, as provided by section 25, of the meeting of the board of public works to determine the assessment district. In a reassessment of the same district it is debatable whether any action by the board to re-establish the district is required; the first step being to issue the notice of the (re)assessment under section 25. However, in this case the original district was not adhered to, and a new one was carved out. Such being the purpose of the board, it was necessary under that decision to establish the new district, and then to make the assessment and to give notice of such meetings as provided by section 25; but it was immaterial that two meetings were held and two notices were given instead of one. State v. District Court of Ramsey County, supra, page 70. The meetings were properly held, and the notices were sufficient.

2. Does the city charter authorize the board of public works to enlarge the assessment district on a reassessment? This objection is raised by certain property owners abutting upon cross streets who are included in the reassessment, but not in the original assessment, and also by one owner who had paid the original assessment.

Section 57, c. 6, tit. 3, City Charter, is too long to insert here; but the first part of it in broad and sweeping terms provides that, when judgment is refused or any assessment is set aside or declared void by any court for any cause whatever, then the board of public works shall, upon notice thereof by the city treasurer, proceed without unnecessary delay to make a reassessment or new assessment upon all property

which has been or will be benefited by such improvement to the extent of its proportionate part, etc.   Such new assessment to be made as nearly as may be in accordance with the law in force at the time. The closing part of section 57 is to the effect that in all cases where a judgment has been or shall be refused or denied, or set aside, for any cause, the property may be reassessed, from time to time, until each separate lot or parcel has paid its proportionate part of the costs and expenses of the improvement as nearly as may be by the benefits derived or to be derived from such improvement, and, in case the amount of such reassessment shall be less than the first assessment upon the lots and parcels of land assessed, the deficit shall be paid out of the general fund.   Again, in the middle part of the section is set forth certain special matters, which it is declared shall not affect the validity of the reassessment.   The closing part of the section, taken by itself, might indicate that it was the intention of the legislature to restrict the reassessment to an adjustment upon the same property originally defined as the benefited district.   But the first part of the section, when read by itself, in the broadest terms expresses the power to make the reassessment upon any property benefited by the improvement.   Although section 58 has reference to deficiencies arising from a mistake in the amount of the assessment, and not to cases contemplated by section 57, yet the same purpose of the lawmakers is there indicated by the provision that property benefited, without any restriction whatever, is made subject to reassessment.

Applying the rule that all portions of an act must be given force, if possible, we are not justified in assuming that the special provision found at the close of section 57 was intended to restrict the sweeping provisions of the first part.   Upon a reassessment it might appear that certain property had been assessed too high, and in such case it would be proper to provide that the deficiency thus arising be paid out of the general fund, provided all other property had been assessed to the extent of the benefits.   Considering the evident purpose to give the board of public works full power to make a reassessment, without regard to the previous defects in the procedure, jurisdictional or otherwise, the apparently conflicting statements to which attention has been called do not warrant the conclusion that it was the intention to prevent the board, upon a reassessment, from reaching any property which, in

their judgment, was benefited by the improvement, or, in other words from carving out a new district. The power is legislative, and not judicial; and no defects, jurisdictional or otherwise, in the proceedings, can affect the validity of a reassessment. Such has been the uniform holding of this court from Rogers v. City of St. Paul, 22 Minn. 494. and City of St. Paul v. Mullen, 27 Minn. 78, down to State v. District Court, supra, page 183, and State v. District Court, supra, page 70. The charter is most confusing in many parts, but from all the provisions on this subject it is clear that it was the intention by a reassessment to enable the board of public works to reach all property benefited, whether included in the original district or not.

3. The objectors insist that an illegal principle and erroneous rule of law was adopted by the board of public works in making the reassessment; (a) that the record conclusively shows that the members of the board did not exercise their judgment in passing on the questions of benefits with respect to the various classes of property involved in the new district. This assertion is based upon the fact that, according to the evidence introduced on the part of the objectors, that portion of the property lying between Washington and West Seventh streets was not valuable for any purpose, except cheap tenements, whereas the property between Washington street and the levee was valuable for manufactories and warehouses on account of its contiguity to the railroad and the river; again, that it appeared from such evidence that Chestnut street was used as a general driveway for the hauling of the dump and refuse from the city and the levee, which fact made the property undesirable for residence purposes, except of the cheapest character; and, further, that the board did not consider the fact that certain of the lots were improved and others not. On the other hand, members of the board testified that in making the reassessment they took into consideration the size, shape, depth, and the lay of the lots, their frontage on the improvement, and their proximity to the street, and to the best of their judgment adjusted the cost of the improvement according to the benefits and made the assessment accordingly.

Conceding that it was proper to receive this class of evidence on the part of the objectors for the purpose of showing whether or not

a wrong principle had been applied in making the assessment, the conclusions of the board must be sustained.  If it appears from the record that the distribution of the benefits upon the property in the district, as carried out by the board of public works, is a matter about which reasonable men might differ, then there is no ground for the application of the rule that they proceeded upon an illegal principle or erroneous rule of law.  One man might argue that the property contiguous to the railroad and the river would be benefited to a greater extent, because the improvement of Chestnut street would afford them a means of ingress and egress to the main portion of the city, and that, inasmuch as Chestnut street is not suitable for the better class of residences, there is a great discrepancy in the benefits conferred upon the two classes of property.  On the other hand, it might be argued by another person that Chestnut street, being improved, would in all probability become a thoroughfare connecting with all of the main streets of the city, the levee, and the railroad, about which manufacturing and warehouse interests would be developed, and that in the course of time the entire portion from Seventh street down to the railroad and levee would become an important business center.  As soon as it is admitted that the subject permits of discussion, the objection to the conclusions of the board is answered.

The objectors further insist that a demonstrable mistake of fact was made, and that the assessment was arbitrary, unequal, and unjust in the distribution of the various classes of property located upon and contiguous to Chestnut street between Seventh street and the railroad. We have examined the evidence upon which these objections are predicated, and find nothing to sustain the position.  For instance, it is alleged that certain property in block 32, fronting upon Franklin street, was entirely omitted from the assessment.  The explanation is that it was considered by the board that that lot had an outlet on Walnut street, and that there would be very little occasion to use Chestnut street, and it accordingly would be assessed to maintain the improvement of Franklin and Walnut streets, and should consequently be released from the burden of improving Chestnut street.  The same explanation is made with reference to other property similarly situated.

Again, it is claimed that a mistake was made with respect to cer-

tain property owned by Mr. Ryan, which has twenty feet frontage on Seventh street, and one hundred feet frontage on Chestnut street. This property was assessed at $378.40, whereas the next twenty feet fronting on Seventh street, adjoining and occupied by a laundry building, was not assessed at all. The explanation is that Ryan paid for the privilege of a double frontage, and his neighbor, having no frontage on Chestnut street, except the advantage of a rear driveway, obtained no such special benefit from the improvement which should subject the lot to assessment. There is nothing to indicate that the members of the board did not fully consider the matter and exercise their judgment with reference to the situation, and come to the conclusion that under the circumstances the Ryan property was benefited to the amount of the assessment.

(b) Was the new district properly established? As stated in the first part of the opinion, about one-third of the assessment originally laid per front foot on Chestnut street was paid by the property owners, and the remaining two-thirds was not paid. The sum so paid, in round numbers, amounted to $5,000, and the amount not paid was $10,000, and in proceedings to reassess the board carved out a new district, eliminating that portion of the property fronting on Chestnut street upon which the levy had been paid, and included in the new district the Chestnut street frontage upon which the levy had not been paid and additional property fronting on cross streets. In making the reassessment, the board entirely ignored the position of all the property owners who had paid, and treated the case as though just so much property was eliminated from the assessment district, and that the entire cost of the improvement had been reduced by the amount already paid. The result was that on the reassessment the property owners fronting on Chestnut street who failed to pay the original assessment were assessed about $1.25 per front foot less than those who paid their original assessment, and the difference was made up by spreading the assessment over new property. This arrangement operated as a penalty upon those who paid their assessments without entering into a contest with the city as to its validity and offered a premium to those who became delinquent.

Under section 58 the right to reassess is limited to those cases where a deficit exists for the reason that the original assessment was too little.

Conceding that, when the total amount levied in the original assessment was insufficient to raise the required amount, then upon a reassessment a new district may be created, including new property, and the entire amount be properly apportioned to the property benefited, there is no authority, express or implied, in section 58 to take in new property upon the reassessment, and put upon it the burden occasioned by default in payment of the original assessment. The power to reassess in respect to this case is found in section 57; but the terms "reassessment" and "new assessment," as used in that section, refer to an entirely new apportionment of the benefits. There is no intent to recognize or validate the payments made under the original assessment. The board of public works is required to make the new assessment as in the first instance; i. e. (a) give notice of a meeting to establish the district deemed to be benefited; (b) determine the amount required to be raised to meet the cost of the improvement; and (c) apportion the total amount to the respective properties according to the respective benefits.

Now, the board did not do this. It assumed that, if it could find new property benefited to some extent, it should be made to help out those who had not paid. It appears from the record that there was no substantial difference in the benefits accruing to property upon which the assessment had been paid and that upon which it had not. It is plain that the board arbitrarily left out those tracts simply because the assessment had been paid. Its action does not imply that the board came to the conclusion that the omitted tracts were benefited to the extent of $1.25 per front foot more than the other tracts fronting upon Chestnut street. Either the original assessment was right, and benefits were limited to the property fronting on Chestnut street, or, if wrong, then there was no attempt to properly apportion the benefits. Such action was in violation of the rule that the board must exercise its judgment, and not adopt an arbitrary and inflexible rule. State v. District Court of Ramsey County, 29 Minn. 62, 11 N. W. 133; State v. Judges of District Court, 51 Minn. 539, 53 N. W. 800, 55 N. W. 122.

One thing further remains to be mentioned. This proceeding in reassessment is but a continuation of the original action, and the objection stated was open to those property owners who had paid the original

95 M.—33

levy. True, but one of such owners appeared and made objection; but he was not estopped because he had voluntarily paid up. He did so upon the theory that the board was right in fixing the original district and the apportionment of benefits. When that procedure was declared invalid by the court, and the board retraced its steps, those who had paid had the right to follow the proceedings and see that their interests were protected. Further, if an incorrect principle was employed in laying out the new district, it is difficult to see why the owners of the new property should not also be heard to object upon that ground, regardless of whether the final adjustment of benefits inures to their benefit.

For the reasons stated the application for judgment against the property involved should have been denied, and the judgment so entered is accordingly reversed.