## EDWARDS v. COOPER.

[No. 20,713.    Filed January 31, 1907.]

1. PLEADING.—*Complaint.—Foreclosure.—Liens.—Sewer Assessments.—Municipal Corporations.*—It is not necessary, in a complaint for the foreclosure of a sewer-assessment lien, to allege that notice was given to the defendant of the amount of the assessment and of the place of payment, as provided by §3626a Burns 1901, Acts 1901, p. 363, since §3846 Burns 1901, Acts 1901, p. 492, in specifying the necessary allegations of such a complaint, omits such fact, the giving of such notice being properly considered as a condition subsequent to be proved by the plaintiff.    p. 58.

2. SAME. — *Complaint.—Sewer-Assessment Liens.—Foreclosure.* —Under the act of 1901 (Acts 1901, p. 492, §3846 Burns 1901) a complaint for the foreclosure of a sewer-assessment lien is sufficient so far as the final assessment is concerned, if it shows the amount and date of such assessment.    p. 60.

3. SAME.—*Complaint.—Sewer-Assessment Liens.—Description.*—. A complaint showing the number and date of the declaratory resolution of the board of public works for the construction of a "main sewer in Northwestern avenue from Fall creek to Crown Hill Cemetery and branches thereto in said city," and also showing a subsequent modification of such resolution by such board, sufficiently identifies the improvement made.    p. 60.

4. SAME. — *Complaint. — Statutes. — Sewer-Assessment Liens.—Foreclosure.*—A complaint for the foreclosure of a sewer-assessment lien, which substantially follows the form prescribed therefor by statute (§3846 Burns 1901, Acts 1901, p. 492), is sufficient, although it further shows that details, drawings and specifications were on file at the time of the adoption of the declaratory resolution and fails to show that a map thereof was on file at such time.    p. 60.

5. WORDS AND PHRASES. — *"Modified." — Statutes.* — The word "modified," as used in section one of the act of 1901 (Acts 1901, p. 608, §3859b Burns 1901) in reference to a resolution ordering the construction of a sewer, imports a change or alteration of the form, character, force, appearance or quality of the resolution.    p. 64.

6. MUNICIPAL CORPORATIONS.—*Sewers.—Modifications.—Statutes.* —The right of modification, in the absence of a forbidding statute, of the boundary of the drainage area of a sewer or of the details of such proposed work, is implied from a general grant of a right to construct such sewer.    p. 64.

7. MUNICIPAL CORPORATIONS.—*Sewers.—Modification.—Jurisdiction.*—The board of public works of a city does not lose jurisdiction over a proposed sewer improvement because of a modification of the plans thereof.   p. 64.

8. SAME.—*Sewers.—Orders Affecting.—Collateral Attack.*—The validity of an assessment for the construction of a sewer cannot, except for fraud, be collaterally attacked, where the board making such assessment had color of authority to proceed. p. 65.

9. SAME.—*Sewers.—Modification of Plans.—Notice of.—Liens.*—Property owners are not entitled to a hearing on the question of a modification of the plans for a proposed sewer, the statute (Acts 1901, p. 608, §§3859b-3859f Burns 1901) providing for a final hearing, before the establishment of the lien, upon all judicial questions concerning same.   p. 65.

10. SAME.—*Sewers.—Construction.—Police Power.—Taxation.*—The construction of sewers by cities is an exercise of the police power, and involves the right of taxation, such exercise being largely discretionary and administrative.   p. 66.

11. CONSTITUTIONAL LAW. — *Drainage.—Taxing Districts.*—The legislature has the power to create taxing districts for the accomplishment of drainage without granting a· hearing on the need thereof to the citizens residing in such district.   p. 66.

12. MUNICIPAL CORPORATIONS. — *Sewers. — Modifications. — Branches.*—The board of public works of a city has the right, without giving a hearing thereon to the property owners interested, to add a branch sewer to a proposed sewer ordered after a general hearing thereon.   p. 67.

13. SAME.—*Sewers.—Location of.*—The board of public works of a city has the power to construct a sewer along the line of a proposed street, and no objection lies thereto, especially where such proposed street was opened before the final hearing of the sewer proceedings.   p. 67.

14. SAME. — *Sewers.—Cemeteries.—Assessments.*—Under §3859f Burns 1901, Acts 1901, p. 608, §5, cities are required to pay from their general funds the portion of a sewer assessment properly assessable against lands used as cemeteries.   p. 67.

15. SAME. — *Sewers.—Connections.—Compensation.*—The agreement of the board of public works of Indianapolis to permit the Crown Hill Cemetery corporation to connect, for its outlet, its sewerage system with one ordered by such board, and the payment of an agreed sum therefor by such corporation, does not invalidate the prior resolution of such board for the construction of such city's sewer.   p. 68.

Edwards *v.* Cooper—168 Ind. 54.

16. MUNICIPAL CORPORATIONS. — *Sewers.* — *Assessments against City.*—Where the assessable cost against a cemetery for sewer construction exceeds $500, the contractor must rely upon the passage of a special ordinance carrying the increased amount, as provided by §3859e Burns 1901, Acts 1901, p. 608, §4, no independent steps in the circuit court being necessary to assess such city for cemetery benefits. p. 68.

17. SAME.—*Sewers.—Cost in Excess of Benefits.—Contracts.—Estimates.*—Under §3859b Burns 1901, Acts 1901, p. 608, §1, the board of public works of a city cannot construct a sewer whose cost will exceed the assessed benefits, nor can a contract be let for the construction of a sewer for more than the estimated cost. p. 69.

18. SAME.—*Sewers.—Jurisdiction.—Irregularities.*—The acts and orders of a board of public works in the construction of a sewer are void where jurisdiction is not first obtained; but where it is obtained, the failure to follow the prescribed formalities of a statute, where no injury results, constitutes an irregularity only, and does not vitiate the proceedings. p. 69.

19. JUDGMENT.—*Collateral Attack.—Cities.—Sewers.*—Mere irregularities by the board of public works in the construction of a sewer, even though in obtaining jurisdiction, do not render the proceedings subject to collateral attack. p. 70.

20. MUNICIPAL CORPORATIONS.—*Assessments for Sewers.—Derivation of Power.*—Cities have only a statutory right to assess property owners for the construction of sewers. p. 71.

21. SAME. — *Sewers. — Necessity for. — Governmental Power.*— Cities, in determining the question of the necessity for the construction of a sewer, act in a governmental capacity. p. 71.

22. SAME.—*Sewers.—Construction.—Jurisdictional Provisions.*— Provisions in a statute concerning the construction of sewers, which have to do with the orderly method of such construction, are not jurisdictional; but those which place a check upon the power of the city to proceed, are jurisdictional. p. 71.

23. SAME.—*Sewer Assessments.—Basis.*—The basis of the power of local assessments for the construction of a sewer lies in the receipt, actual or constructive, of benefits therefrom, otherwise such assessments would constitute confiscation. p. 71.

24. SAME. — *Sewers.—Districts.—Assessments.—Benefits.—Cost. —Statutes.—Mandatory.*—The provisions of the statute (§3859b Burns 1901, Acts 1901, p. 608, §1) requiring the board of public works to enter its findings as to the boundaries of the proposed sewer district, and also that the benefits shall equal or exceed the cost thereof, are strictly mandatory, and a disregard thereof by such board renders an assessment void. p. 72.

Edwards *v.* Cooper—168 Ind. 54.

25. MUNICIPAL CORPORATIONS. — *Sewer Districts.* — *Benefits.* — *Findings.*—*Record.*—The findings of the board of public works that a certain territory shall constitute a sewer district, and that the benefits from the construction of the proposed sewer are equal to or greater than the cost, must be entered of record. p. 72.

26. SAME. — *Sewer Districts.* — *Subsequent Enlargement of.* — *Right of Complaint.*—The subsequent enlargement of a sewer district by the board of public works of a city cannot be upheld by the courts on the ground that the additional property taken in paid a sum towards the construction of the sewer sufficient to reduce the cost to the owners in the original district below the amount of the original estimates, the duty of making proper assessments being vested in the local authorities and not in the courts. p. 72.

27. SAME.—*Sewer Assessments.*—*Injunction.*—*Estoppel.*—A failure by an assessed property owner to enjoin the construction of a proposed sewer does not estop such owner from defending against an assessment therefor, where the proceedings in reference to such construction are void. p. 74.

28. SAME. — *Sewer Assessments.* — *Injunction.*—*Diligence.*—*Estoppel.*—In order to restrain the collection of a sewer assessment, the property owner must act in good faith and with reasonable diligence, otherwise an injunction will be denied, acquiescence being presumed. p. 74.

29. SAME.—*Sewer Assessments.*—*Validity.*—*Notice of Contest.*—*Estoppel.*—Where a property owner gives notice to the contractor, before the construction of a sewer, that he will contest the validity of the assessment therefor, he is not estopped from defending against such assessment, where the assessing tribunal has exceeded the limitations of its powers. p. 75.

30. SAME. — *Sewer Assessments.* — *Void.* — *Supplementary Proceedings.* — *Statutes.* — *Remedial.* — *Validity.* — Under §3859e Burns 1901, Acts 1901, p. 608, §4, supplementary proceedings may be had to supply defects in an invalid sewer assessment; and such remedial statute is valid, though it extends to jurisdictional matters. p. 75.

31. SAME. — *Sewer Assessments.* — *Void.* — *Remedy.* — Where a sewer assessment is void because of a jurisdictional defect, the board of public works has the right, under §3859e Burns 1901, Acts 1901, p. 608, §4, after due notice to property owners, to take the required legal steps, so far as conditions permit, and make a new assessment. p. 77.

From Superior Court of Marion County (66,994); *Vinson Carter,* Judge.

Suit by Wilmington K. Cooper against Eliza T. Edwards. From a decree for plaintiff, defendant appeals. *Reversed.*

*Herod & Thompson* and *Hugh D. Merrifield,* for appellant.

*Frank C. Groninger* and *Linn D. Hay,* for appellee.

GILLETT, J.—Suit by appellee for the foreclosure of a sewer assessment against certain real estate of appellant, situate in the city of Indianapolis. From a decree in appellee's favor appellant appeals, assigning error based on the overruling of her demurrer to the complaint and on the overruling of her motion for a new trial.

The principal objection urged to the complaint is that it does not allege that a ten days' notice was given by appellant to appellee of the amount of the assessment, and where it might be paid. Section one of the act of March 9, 1901 (Acts 1901, p. 363, §3626a Burns 1901), which is applicable to cities generally, provides: "No action shall be maintained for the enforcement of any lien, or assessment, * * * unless it be shown to the court that reasonable inquiry was made for the full name and address of the owner of the land so assessed and that at least ten days before the commencement of such suit such owner, if found or known, was notified of such assessment, including the amount thereof with interest, and where the same is payable." On the other hand, by section one of an act passed two days later (Acts 1901, p. 492, §3846 Burns 1901), applicable to cities of the class to which Indianapolis belongs, a remedy by way of foreclosure is given to contractors, wherein it is provided: "It shall not be necessary in any such foreclosure suit or suits to set forth or refer to the proceedings at length or specifically, but it shall be sufficient to state in such complaint the day on which the contract was finally let, the name of the street or highway improved, the amount and date of the assessment, that the assessment is unpaid,

and a description of the lot or property upon which the
assessment was levied." It would be impossible to resist
the conclusion that the first of said acts had been repealed
*pro tanto,* if it were construed to require the plaintiff to
tender an issue upon the question of notice, but no such
result would follow should the statute be construed ac-
cording to its language. The provision is that "no action
shall be *maintained* [not commenced]   *   *   *   unless
it be *shown to the court* [not until notice is given] that,"
etc. (Our italics.) It was probably the purpose in the
enactment of this section to protect persons who make de-
fault, or who are not seeking to question the legality of
the proceedings by which it is claimed that the lien has
attached. We cannot, however, regard the statute as a
limitation upon the right of action which the legislature
provided for. It appears to us rather to be a requirement
that the plaintiff shall show to the court, as a condition to
the maintenance of the action, that he gave the requisite
notice. As was said in *Nagel* v. *City of Buffalo* (1884),
34 Hun 1, concerning a statute which was similar in prin-
ciple to the one under consideration: "But I am of the
opinion that the question cannot be properly raised by de-
murrer, as it was unnecessary to aver in the complaint the
presentation of the claim to the common council. The
plaintiff's cause of action was complete without presenting
his claim for damages to the common council. His cause
of action is not given by any statute, but is founded on the
principles of the common law. The requirement that the
claim shall be presented for audit relates to the remedies
to which the plaintiff must resort in order to secure an
adjudication and payment of his demand. The provision
of the statute is in the nature of a condition subsequent.
A neglect to comply with it would operate to defeat a re-
covery, but its observance does not constitute any part of
his cause of action.   *   *   *   The provision of the char-
ter requiring a verified statement of the claim to be pre-

sented contemplates that it is due and payable, and that the plaintiff's cause of action is complete. The rule of pleading that every fact which it is necessary to prove to entitle the plaintiff to recover must be averred in the complaint, is subject to the qualifications and limitations stated."

It is claimed that the assessment roll is the foundation of the suit, and it is asserted that there is a discrepancy between the date of the exhibit filed with the complaint and the allegation as to the date of the final estimate. The exhibit which was attached to the complaint was the estimate roll. Under Acts 1901, p. 492, §3846 Burns 1901, it was sufficient, so far as the final assessment was concerned, to show in the complaint the amount and date.

2.

It is objected that the complaint does not state the streets and alleys through which certain mentioned branches of the sewer extended. The requirement of said act, that the complaint state the name of the street or alley improved, is for the purpose of identifying the particular work or subject-matter, so that the defendant may prepare his defense, and that he may not be subjected to a second action. Here the complaint not only gives the number and date of the declaratory resolution, but it states that such resolution provided "for the construction of a main sewer in Northwestern avenue from Fall creek to Crown Hill Cemetery, and branches thereto in said city;" and it also alleges a subsequent modification of the resolution by the board of public works. All branches were necessarily a constituent part of the principal project, and we are of the opinion that the improvement was so identified by the complaint that it was not in that particular insufficient.

3.

It is next contended that we should infer as against the pleader that a map was not on file at the time of the adoption of the declaratory resolution; that because it is alleged that details, drawings and specifications were on file we should infer that a map was not filed.

4.

It is sufficient to say that, as the complaint before us substantially meets every requirement of the form authorized by statute, we decline to hold that where the pleader has seen fit to go further than is required in setting out what was done, his silence on further points should be presumed against him. *Collins* v. *Amiss* (1902), 159 Ind. 593, affords appellant no support in this particular, for it was there merely held—the case being one in which the plaintiff, as a matter of pleading, was required to show performance—that if he did not avail himself of the method of pleading performance which is provided for by the civil code, but attempted to plead the facts relative thereto, he must go far enough to show performance by his pleading. As we have before had occasion to observe, the complaint contains substantially all of the allegations required by statute, and, as it does not reveal anything which would oust the jurisdiction of the board, we hold it sufficient in point of form.

It appears from the evidence that on June 27, 1902, the board of public works passed a declaratory resolution for the building of a sewer in Indianapolis, extending in a southeasterly direction, along Northwestern avenue, from Thirty-second street to Twenty-fourth street, and extending thence west on said street about fifteen hundred feet, and from thence south to Fall creek, with a branch that intersected the main sewer at Twenty-fourth street. The resolution provided for an assessment upon the real estate in the assessment district and upon the city, if it should be benefited. A profile, specifications, plans, and a map were then on file. July 5, 1902, the engineer filed an estimate that the improvement would cost $61,800. The map showed a territory about forty-two hundred feet long and thirty-three hundred feet wide beneficially affected, aside from the territory affected by the branch. Within this territory was a tract of about forty acres belonging to appellant, which abutted on the main sewer. Notice was

given by publication of the adoption of the resolution, and of the day fixed when all persons interested or whose property would be affected would be heard. The notice described the course of the main sewer and of the branch, but in attempting to describe the property which would be beneficially affected all introductory words were omitted, and after the words "beginning at the north line of Thirty-second street at a point opposite the east line of Schuebner's subdivision," there followed a description by metes and bounds that extended along the exterior lines of the territory shown on the map to be in the assessment district, and closing with the words, "thence north, along the east line of Schuebner's subdivision to the north line of Thirty-second street, the place of beginning." On July 21, 1902, the day fixed for the hearing, a considerable number of interested landowners attended, and a hearing was had. After the hearing, but on the same day, the board made the statutory finding as to benefits, and then modified its resolution, in that it ordered the construction of an additional branch sewer, commencing at the center of Thirty-second street (at a point east of Northwestern avenue) and extending thence south, along the line of a proposed street, and thence west to the main sewer. The district map was corrected on that day, by tracing the branch upon it, and apparently it was readopted by the board. On the same day, but after the proceedings, the engineer corrected his estimate, so as to show that the total cost of the sewer would be $74,750. The new branch sewer was wholly within the assessment district. The details, plans, specifications, etc., were prepared and filed by the engineer as soon as possible after the hearing, and within a few days thereafter. The contract, after due notice, was let to appellee for a sum approximating $69,000, and the work was completed by him, and accepted by the board. The amount due him under his contract is $69,494.30. Going back somewhat in our narrative of the evidence, it appears that there was

a considerable amount of water that had its natural drainage through Crown Hill Cemetery, which was situate immediately north of Thirty-second street, and without the city. The topography of the country was such that this surface drainage flowed from Crown Hill Cemetery in a southeasterly direction into the drainage district, but the building of the original sewer would not serve to intercept this water. The board had in contemplation the building of an independent sewer to dispose of such water. Crown Hill Cemetery, a corporation, was desirous of procuring drainage, and at or about the time of the adoption of the modification there was some negotiation between said corporation and the city engineer relative to the corporation's paying something toward the cost of the sewer, if a branch should be so constructed as to intercept the water spoken of. Subsequent to the adoption of the modification, and before the letting of the contract, said corporation entered into a formal agreement with the board, which agreement was ratified by the city, that said cemetery corporation would "pay to and reimburse the city of Indianapolis the cost of such construction to the extent of forty-four per cent of the seventy-six per cent of the cost of such construction determined by said board of public works, to be assessed and calculated as and for the sewer as a district sewer." Said cemetery corporation had at that time in contemplation the construction of an extensive sewerage system within its own property, and the contract provided that the branch should be connected with its lands. Under this agreement said corporation contributed $23,138.89. The evidence does not show whether the city of Indianapolis was assessed, or what was done with this money, but we infer that said payment was deducted from the cost of construction, and that the balance was assessed against the owners of lots and parcels of land in the assessment district. There seems to have been no formal finding, aside from the readoption of the map, that the district was prop-

erly bounded, and there was no finding that the special benefits to property within the district and the benefits to the city would equal the estimated cost of constructing the sewer provided for in the modified resolution. No further statement of the proceedings of the board appears to be necessary. Appellant had actual notice of the steps taken to build the sewer, as early as the date of the letting of the contract. On that day she notified appellee that the proceedings were not in accordance with law, and that she would contest the assessment.

The first contention of appellant's counsel is that the assessment is void because of the modification of the original resolution. Section one of the act of 1901 (Acts 1901, p. 608, §3859b Burns 1901) provides that after the original hearing "the said original resolution may be rescinded, confirmed or modified." The first definition given by the Encyclopædic Dictionary of the transitive verb "modify" is: "To change or alter the external qualities or accidents of anything; to vary, to alter; to give a new form, character, force, or appearance to." There is nothing in the statute to limit this right of modification to a change in the external boundaries of the drainage area, or to the immediate details of the proposed work. In the absence of anything to the contrary in the statute, it might well be affirmed that the right to make modifications in the proposed work would be an incident of the general grant of the right to make such improvements. Board, etc., v. Gibson (1902), 158 Ind. 471. At least it could not be said that the making of such a change would render the board destitute of jurisdiction. It appears to us that the general purpose of the lawmaking power was to afford the board some latitude of discretion in respect to a determination of any matter which could fairly be said to be related to the principal work, or which would more justly distribute the burden thereof. The change

which was made in this instance had an immediate relation to the drainage area, it was connected with the principal work, and was so far subsidiary to it that, according to the estimate, it added but about one-seventh to the cost. Power must be reposed somewhere, and in this instance it has been vested in the municipal authorities. If 8. we should undertake to say that in this case they had overstepped their power, exercised under an authority as elastic as would be implied from the grant of a right to modify, there could be no certainty about such matters, with reference to how far the officers could go, and a grant of authority to exercise discretion in connection with proceedings designed to be for public purposes, and intended to be to a considerable extent summary, would become, instead of an element of practicability, a most fruitful source of litigation. It is further to be recollected, as the Supreme Court of the United States has had occasion to point out (*Hibben* v. *Smith* [1903], 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195), that assessments for public improvements, under the practice as it exists in Indiana, are in the nature of judgments. When, therefore, we have before us a case like this, in which the validity of an assessment is collaterally questioned, and it can really be said that the extent of the power has been left so elastic as to call upon the tribunal to determine its authority in a particular instance, we are of opinion that, so long as there remains color of authority to proceed, the decision of such tribunal upon the extent of the power to modify is so far of a jurisdictional nature that the courts are not at liberty, in the absence of fraud, to overthrow the decision on collateral attack.

Appellant assigns as a reason for a narrower construction of the word "modify" that, notwithstanding the statute, she was entitled, as of right, to a hearing, 9. after the modification was made, on the character of the work proposed. There is no merit in this

claim.   Ample provision is made by the act under which the assessment was made. (Acts 1901, p. 608, §1, §3859b Burns 1901), for a final hearing upon all questions which are so far of a judicial nature as to require that there should be a hearing before the lien is established.   The right to provide drainage for the benefit of a locality rests in the police power of the State, and the exertion of the authority involves an exercise of the power of taxation.   The legislature may by law provide for drainage, and for the creation of drainage districts or areas, and, when the power is so exerted, it is essentially of a legislative nature, the propriety of which can seldom be reviewed by the courts.   Instead of making definite provision on the subject, the legislature, being unable to inquire into the merits of each case for itself, may entrust this duty, under the general rules, to a local body, and in such case the local tribunal, although its action in the premises is in its nature administrative rather than legislative (*Blue* v. *Beach* [1900], 155 Ind. 121, 50 L. R. A. 64, 80 Am. St. 195; *Isenhour* v. *State* [1901], 157 Ind. 517, 87 Am. St. 228), nevertheless at certain stages exercises a power of government not judicial in its nature, and it is therefore competent for the legislative authority to devise a scheme for the accomplishment of drainage which makes no provision for a hearing upon the necessity of the work or the proper bounding of the district in which special assessments are to be levied.   This question was set at rest by *French* v. *Barber Asphalt Pav. Co.* (1901), 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879.   But we may further cite, *Spencer* v. *Merchant* (1888), 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 736; *Paulson* v. *City of Portland* (1893), 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; *Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 7 L. R. A. 681; *Barber Asphalt Pav. Co.* v. *Edgerton* (1890),

Edwards v. Cooper—168 Ind. 54.

125 Ind. 455; *Gibson* v. *Board, etc.* (1891), 128 Ind. 65,
11 L. R. A. 835; *Swain* v. *Fulmer* (1893), 135 Ind. 8;
*Hughes* v. *Parker* (1897), 148 Ind. 692; *Pittsburgh, etc.,
R. Co.* v. *Fish* (1902), 158 Ind. 525; *Brown* v. *Central
Bermudez Co.* (1904), 162 Ind. 452; *Voris* v. *Pittsburg
Plate Glass Co.* (1904), 163 Ind. 599; *Spaulding* v. *Mott*
(1906), 167 Ind. 58. It therefore appears to us that
it was lawful for the board, after the general hearing provided for by statute was had, to modify the
resolution by adding a branch to the proposed work.
We do not regard it as necessary, in view of the disposition which must be made of this case, to pass upon the sufficiency of the original notice to give jurisdiction over the
person of appellant, or to determine whether the giving
of such notice was essential to the validity of the proceedings.

There is nothing in the objection that the modified resolution called for the building of a sewer along the line of
a proposed street. The board possessed authority
to open streets, and to obtain a right of way for the
sewer, and the mere fact that it adopted the resolution before the street was opened was, at the most, but an
irregularity, of which no property owner can complain, it
being admitted that the street was regularly opened before
the final hearing.

We next take up the agreement with Crown Hill
Cemetery corporation to pay a certain portion of the expense. By section five of the acts of 1901 (Acts
1901, p. 608, §3859f Burns 1901), the legislature
has directed that lots or parcels of land, held, used,
or occupied for cemetery purposes shall not be assessed for
the construction of sewers or drains, but that so much of
the cost of a sewer or drain as would be assessible against
such lots or parcels of land, if not so held, shall be assessed
against such city and shall be paid by it. Assuming, as in
justice to appellant we ought to, that the agreement we have

spoken of practically had the effect of bringing Crown Hill Cemetery into the assessment district, it will be perceived that the effect of the statute last referred to was to charge the city with all benefits which would have been properly chargeable to Crown Hill Cemetery, had the property not been held as a cemetery.

The agreement in question did not obligate the board to do anything more than to connect the branch with the Crown Hill Cemetery system at the center of Thirty-second street, and, while we doubt the propriety of the board's accepting stipulations on behalf of the city as to the contributions third parties will make in the event a work already ordered is completed, yet, in view of the fact that there is no evidence of any purpose on the part of the board to do aught that would be calculated to prejudice the interests of anyone, and as the tribunal still retained a free hand to fix assessments as the circumstances required, we are of opinion that the making of the agreement did not render the prior resolution invalid.

It was not necessary to transfer the proceedings to the circuit court to warrant an assessment against the city on account of benefits to outlying cemetery property. Provision is made by statute (§3859e Burns 1901, Acts 1901, p. 608, §4) whereby the board is authorized to expend appropriated money up to $500 in payment of city benefits, and beyond that the contractor must depend upon the enactment of an ordinance carrying a special appropriation. These provisions appear to us to be somewhat administrative in character, and, as in a sense the board is acting on behalf of the city, we are of opinion that no independent steps are required to be taken in the circuit court to obtain jurisdiction of the city to assess it for cemetery benefits, it being already subject to assessment for general benefits.

We now approach a far more serious question, namely, as to the omission of the board to enter a finding concerning

benefits after the order for the construction of the branch. Section one of the act of 1901 (Acts 1901, p. 608, §3859b Burns 1901) provides: "If the board shall decide after such hearing that the area or district to be drained is properly bounded, that the special benefits to the property within such district or area, and the benefits, if any, to the said city will be equal to the estimated cost of the improvement as aforesaid, such finding shall be entered of record, and shall be final and conclusive on all parties, and the said resolution shall be confirmed or modified; but if it be decided by the board, after such hearing, that the benefits as aforesaid will not equal such estimated cost, then said board shall proceed no further with such improvement under said resolution." It is also to be noted that by the same section the board is prohibited from letting a contract in excess of the estimate. These provisions, as we have seen, were disregarded by the board.

Many general observations are to be found in cases of this character concerning jurisdictional defects and irregularities, but perhaps no more perspicuous discussion of the subject is to be found than is contained in *Wilson* v. *Simmons* (1896), 89 Me. 242, 254, 36 Atl. 380. It was there said: "It is undoubtedly true that in the exercise of the power of eminent domain delegated to them by the legislature, municipal corporations should be held not only to a strict compliance with all prerequisite conditions and limitations for its exercise, but also to an observance of all substantial provisions respecting the mode of procedure which were prescribed and intended for the protection of the citizen and to prevent a sacrifice of his property. If there be an omission of any of the essential jurisdictional requisites, the proceedings will be void. If, however, the defect is not so radical as to deprive the council of jurisdiction, but is only a deviation from certain minor provisions, designed to secure method and conven-

ience in the procedure, it may properly be termed an irregularity only; and if the rights of the landowner would not be injuriously affected thereby, it will not vitiate the proceedings.    2 Dillon, Mun. Corp. (3d ed.), §§604, 605; Black, Interp. of Laws, 340, and cases cited.    The distinction is expressively stated by Chief Justice Peters in *Cobbossee Nat. Bank* v. *Rich* [1889], 81 Me. 164, 16 Atl. 506: 'Generally speaking, it is the difference between substance and form, between void and voidable, or between void action and imperfect action.    Error or nullity goes to the foundations, and discovers that the proceedings have nothing to stand upon, while irregularity denotes that the court was acting within its jurisdiction, but failed to consummate its work in all respects according to the required forms. The one applies to matters which are contrary to law, the other to matters which are contrary to the practice authorized by the law.    One relates more to the act, the other to the manner of it.    It may be stated as a general rule, that in doubtful cases the courts incline to treat defects in legal proceedings as irregularities rather than as nullities.'    It may be added that, in the class of cases to which the one at bar belongs, if the defect is not plainly jurisdictional but relates to form rather than substance, the question whether it shall be deemed an irregularity or render action a nullity must be determined mainly by considerations of justice towards the parties to be affected."

It is thoroughly settled that irregularities will not vitiate an assessment on collateral attack, and this doctrine has even been extended to irregularities in what has been termed the acquiring of jurisdiction.    *Ross* v. *Stackhouse* (1888), 114 Ind. 200; *McEneney* v. *Town of Sullivan* (1890), 125 Ind. 407; *Barber Asphalt Pav. Co.* v. *Edgerton, supra; Hibben* v. *Smith* (1902), 158 Ind. 206; *Brown* v. *Central Bermudez Co., supra.* Some confusion as respects the matter of jurisdiction or

Edwards *v.* Cooper—168 Ind. 54.

power has grown out of the failure to consider the nature of the authority under which local assessing tribunals proceed. Jurisdiction of the subject-matter of assessments flows from the law, and is a thing wholly independent of power in the particular instance. In the carrying out of the granted authority the tribunal exercises governmental power in some particulars, as in determining upon the necessity of the work; in others it exerts its business authority; while in still other matters, which can really be said to involve the power to decide, its action, so far as collateral attack is concerned, involves the ordinary consequences of jurisdiction asserted. Now, it is obvious that in the taking of those steps which cannot be said to involve an exercise of the power to decide, the effect of the omission to observe a provision of the statute depends upon whether the particular provision has to do with orderly methods in the transaction of the business, or whether it was placed in the statute as a check upon the power of the tribunal. It is the latter class of provisions which the cases term jurisdictional. When we consider the language of the statute and the nature of the omission which is here involved, there is no question but that we have before us a case in which there has been a neglect to observe what is jurisdictional. Under the act before us the lawmaking power, instead of exerting its own authority to provide by law for the improvement and the creation of the taxing district, has granted to the board these elements of governmental power, but the grant of authority has been hedged about by provisions which relate to matters of fundamental right, and the very authority has attached to it what is in form a condition precedent. The whole idea of local assessments goes upon the theory of commensurate benefits received, either actual or conclusively presumed from the exercise of the authority. *French* v. *Barber Asphalt Pav. Co., supra;* *Fall-*

*brook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Paulson* v. *City of Portland, supra;* 2 Cooley, Taxation (3d ed.), 1153. To proceed upon any other theory would be to countenance the view that the taking may be lawful although the assessment is but a disguised form of confiscation. It does not therefore admit of question that the provisions of the statute concerning the entering of findings as to the bounding of the district, and as to the benefits being equal to the estimated cost, are in the clearest degree mandatory. They, in many instances, constitute the only check which the taxpayer has against the exercise of arbitrary and oppressive power in those particulars. When a record is presented in which it appears that the board has utterly failed to observe these fundamental requirements, it must be affirmed that there is a want of power to fix an assessment. *Miller* v. *City of Amsterdam* (1896), 149 N. Y. 288, 43 N. E. 632. It is plain that such findings, where required to be made in writing, must be entered by the tribunal. *Poillon* v. *Mayor, etc.* (1900), 65 N. J. L. 538, 47 Atl. 439; *John* v. *Connell* (1902), 64 Neb. 233, 89 N. W. 806; *Stebbins* v. *Kay* (1890), 123 N. Y. 31, 25 N. E. 207. It was said in the latter case: "The legislature desired the commissioners to make a solemn declaration that they had done their duty. * * * We think that the property owner had the right to demand the certificate and the whole thereof, and it is no answer to say that an officer is presumed to have done his duty."

But it is argued by counsel for appellee that inasmuch as Crown Hill Cemetery contributed more than $23,000 to the cost of the sewer, and as but about $13,000 was added to the original estimate, after the branch was determined upon, it affirmatively appears that the property owners were in fact benefited by the arrangement. This proposition has a veneer of plausibility upon it which makes it quite calculated to deceive at first thought, but we

are persuaded that the idea is thoroughly sophistical. The board has power in drainage cases conclusively to settle the question of the extent of benefits in the district, for the purpose of ordering the work, when it is acting within the law, but we cannot indulge such an intendment in its favor when it neglects so to proceed. The project of building the originally proposed sewer was essentially more limited. We cannot even conjecture how much it actually would have cost to execute it, or what would have been the relative cost of the main sewer as compared with the branch. We do not know how much the city ought to be, or would have been, assessed on account of general benefits had the project remained as at first proposed. Since the lawmaking power has vested the authority to determine benefits and damages in the local authorities, and not in the courts, how can we know, or how could a court try the question, whether the supposed advantage was really a net gain to the property owners? Questions as to the capacity of the sewer if connected with another sewerage system above, of water backing into basements in the drainage area in times of flood, and as to the obstruction of the sewer by silt flowing into it from the upper lands, are among the questions which obtrude themselves as matters which the courts are not authorized to try in this kind of a case, but which must necessarily be considered in determining whether the benefits to the district will equal the cost of construction. Another consideration with reference to Crown Hill Cemetery's contribution to the cost of the sewer is whether we ought to count its contribution as of advantage to the property owners subject to be assessed, when we have no knowledge as to whether the board treated such property as within or without the drainage territory for the purpose of determining the extent of benefits which the city should pay on account of the drainage of said cemetery. If the amount which Crown Hill Cemetery paid is to be used as the basis

of an argument wherewith to meet the objections of the property owners, may they not, without departure from their original objection—that the benefits to the district have not been found to equal the cost—make reply that if the drainage of Crown Hill Cemetery is really an integral part of this drainage plan, thus rendering the city liable, the territory should have been brought in, so that all questions concerning what is essentially one project could have been settled, and the benefits and damages placed where they belong? A defect in the proceedings as to another person would not, under the statute, constitute a defense, but where there is a failure to find a jurisdictional fact, and the proceedings are so mixed up with an extraterritorial scheme of drainage that we cannot be sure that the property owner whose assessment is sought to be foreclosed has in nowise suffered, the proceeding cannot be upheld. Indeed, we may say of such a record as this case involves that, unless we were prepared conclusively to presume that the local authorities could do no wrong, we do not perceive how the proceedings in this case could be upheld.

Counsel for appellee contend that because appellant did not enjoin the making of the improvement she should be treated as estopped. This court has never intimated that a failure to take steps to arrest the improvement would preclude the making of a defense where the defect consisted of more than an irregularity. The cases cited by counsel, to the effect that a landowner, who has stood by without objection while his property was being improved, may be denied an injunction to prevent the enforcement of the assessment, rest on entirely different grounds, since nothing but conscience, good faith, and reasonable diligence can call the powers of a court of equity into activity, and where these are wanting the court is passive and does nothing. *Smith* v. *Clay* (1766), Ambl. 645; *Ryason* v. *Dunlen* (1905), 164 Ind. 85. In the circumstances mentioned, the failure to make

objection, as against a contractor who was acting in good faith and under color of law, might be treated as an acquiescence in what had been done. *Ryason* v. *Dunten, supra;* *Matthews* v. *Murchison* (1893), 17 Fed. 760; 1 Cyc. Law & Proc., 630. An acquiescence is tantamount to assent, and might even cut off a defense. But where the omission in a public improvement proceeding is jurisdictional, and, instead of standing by, the landowner gives timely notice to the contractor that he will contest the assessment if the improvement is made, it would be flying in the face of principle to deny to him the right to urge by way of defense that his property was being taken from him in defiance of those provisions of the statute which were really intended as limitations upon the power of the assessing tribunal. We have found no case which questions this view of the law; but many are the implied holdings and intimations to the contrary. As was said by the supreme court of Kansas, where property owners had served due notice upon the officers and contractor: "This is as far as the law requires them to go. It did not demand that they institute a litigation to keep the city from improving their property." *Keys* v. *City of Neodesha* (1902), 64 Kan. 681, 68 Pac. 625. So we find it stated in 25 Am. and Eng. Ency. Law (2d ed.), 1206: "No estoppel can arise, of course, where the property owner does not acquiesce in the construction of the improvement, but, on the contrary, enters his protest thereto."

In *State* v. *Mayor, etc.* (1899), 63 N. J. L. 202, 42 Atl. 773, the court held that under the statute of New Jersey the delay of the property owner to bring suit to enjoin the enforcement of a street assessment should not be treated as laches, as "upon a reassessment, justice can be done both to the city and the landowner." And so here it appears that there can scarcely be a basis for estoppel in any event, since the statute upon which appellee bases his suit (§3859e Burns 1901, Acts 1901, p. 608,

§4) provides for the remedying of defects by supplementary proceedings of the character described in the act, to "correct or *supply*" (our italics) such defects. The validity of such enactments does not admit of question. *Spencer* v. *Merchant* (1888), 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; *Lombard* v. *West Chicago Park Com.* (1901), 181 U. S. 33, 21 Sup. Ct. 507, 45 L. Ed. 731; *Duniway* v. *Portland* (1905), 47 Ore. 103, 81 Pac. 945, and cases cited; *People, ex rel.,* v. *City of Pontiac* (1900), 185 Ill. 437, 56 N. E. 1114; *Byram* v. *City of Detroit* (1883), 50 Mich. 56, 12 N. W. 912, 14 N. W. 698; *Heath* v. *McCrea* (1898), 20 Wash. 342, 55 Pac. 432; 2 Dillon, Mun. Corp. (4th ed.), §814. And see *Osborn* v. *Maxinkuckee, etc., Co.* (1900), 154 Ind. 101. Such statutes have been held to extend to jurisdictional matters. *State, ex rel.,* v. *District Court, etc.* (1905), 95 Minn. 183, 103 N. W. 881; *State, ex rel.,* v. *District Court, etc.* (1906), 97 Minn. 147, 106 N. W. 306; *State, ex rel.,* v. *District Court, etc.* (1905), 95 Minn. 503, 104 N. W. 553. They are clearly provisions of a remedial nature, since in ordinary circumstances their operation is to compel persons whose property has been enhanced in value by public improvements, and who ought in morals and justice to contribute to the cost, to bear their fair share thereof. *Duniway* v. *City of Portland, supra.* As stated in Cooley, Taxation (2d ed.), 310: "The reassessment will be for the purpose merely of enforcing against him a duty which he was likely to evade, by reason of the non-feasances or misfeasences of the officers who ought to have enforced it; and as the new proceeding will give him the same opportunity of being heard that is given in other cases, and will be conducted on principles that operate generally, he has no reasonable ground of complaint." See, also, Cooley, Taxation (2d ed.), 496.

It appears to us that, *prima facie,* appellee has an adequate remedy to recover the amount he may be justly and legally

entitled to from appellant, by having the board, after due notice, take the various steps required by law, so far as existing conditions may permit, but in any event the evidence in this case did not warrant a decree of foreclosure.

Judgment reversed, with a direction to sustain appellant's motion for a new trial.