CITY OF DULUTH v. ROBERT A. DAVIDSON.[1]

March 2, 1906.

Nos. 14,630—(212).

**Assessment for Local Improvement.**
    Under a city charter which required the cost of sewer improvements to be assessed upon the real estate benefited in proportion to the benefits, the board of public works adopted an arbitrary and illegal principle in assessing the lots involved according to the cost of the improvement in front of them, respectively, when according to the evidence all the lots were equally benefited.

The board of public works of the city of Duluth having levied an assessment upon abutting property to defray the cost of constructing a sewer, defendant Robert A. Davidson, owner of certain lots affected

[1] Reported in 107 N. W. 151.

thereby, appealed to the district court for St. Louis county. The case was tried before Cant, J., who found in favor of the city and directed judgment confirming the assessment. From a judgment entered pursuant to the findings, defendant appealed. Reversed.

*H. J. Grannis, Roger S. Powell,* and *Stearns & Hunter,* for appellant.

*Bert Fesler,* for respondent.

LEWIS, J.

The city charter of Duluth provides that a sewer improvement may be commenced by the city council upon a petition therefor signed by the owners of ten per cent. of the real estate to be assessed for the same. Section 356, in part, reads:

> The city of Duluth is hereby authorized * * * to construct, lay, relay and repair * * * sewers * * * in, over or under any street * * * and the whole or any part of the expense of any such improvement may be, subject to the provisions hereinafter contained, defrayed by an assessment upon the real estate benefited thereby in proportion to such benefits without regard to cash valuation, to be determined and levied in the manner hereinafter provided.

Section 372 provides that, when the board of public works shall be ordered by the common council to make such an improvement, it shall cause an estimate of the cost thereof to be made by the city engineer, and shall thereupon proceed at once to assess eighty per cent. of the estimated cost of such improvement as is assessable on the property to be benefited thereby in proportion, as nearly as may be, to the benefits resulting thereto, but in no case in excess of such benefits.

The owners of ten per cent. of the real estate abutting on the improvement petitioned the city council to construct a sanitary sewer on South street, from a point two hundred fifty feet west of Twenty-Third Avenue East, to connect with the sewer on South street at Nineteenth Avenue East. The matter was referred to the board of public works, when the city engineer estimated the cost to be $2,324.85. A contract for the construction of the sewer was thereupon let, and the contractor paid the sum of $3,754.88, and thereafter the city engineer reported to

the board of public works that the cost of the sewer from the outlet at Nineteenth avenue to the manhole at Twenty-First avenue was $1,206.-73, and the cost of the portion east of that point $2,548.15, and that the engineering expenses were $190. Thereupon the board made an assessment against each of the twenty seven lots on the upper side of South street, abutting upon the sewer, adding six per cent. for engineering expenses, and assessed sixteen of the lots, those lying between Nineteenth avenue and Twenty-First avenue, at $79.95, and the eleven lots east of Twenty-First avenue at $245.55 per lot.

The owner of a lot east of Twenty-First avenue, and also of a lot west thereof, took an appeal to the district court from the assessment, specifying that the assessment was made without regard to the actual benefits to the property to be assessed for the improvement, and the assessment was not divided equally or proportionately among all of the lots affected by the improvement, according to the benefits; that the board assessed some of the lots greatly in excess of the actual benefits and greatly in excess of amounts assessed against other lots similarly situated and equally benefited; also, that the board did not act upon their own judgment, or exercise any judgment, in making such assessment, but that the same was made and determined in an unauthorized and illegal manner and upon an arbitrary or erroneous basis or rule.

The trial court found that the amounts of the assessments appealed from were not in excess of the benefits, respectively, to the lots against which the assessments were levied, and that such assessments, respectively, were not in excess of the proportionate cost of the improvement properly assessable against such lots, and ordered judgment confirming the assessment. It was stipulated at the trial that the clerk of the board of public works represented the board and that his testimony should be considered as the testimony of its members.

The object of appellant at the trial seems to have been to demonstrate that the board applied a wrong principle, and did not make the assessment upon the lots in question in accordance with the benefits as determined by them. The clerk testified that the entire work was divided for the purposes of assessment into two sections: One, including all those lots on the upper side of South street, west of Twenty-First avenue; and the other, constituting all of the lots upon the same side of

the street east of Twenty-First avenue. He stated that practically all
of the lots to the west of that point consisted of earth, and we shall
hereafter call them "earth" lots, whereas the lots east of that point con-
sisted almost entirely of rock, hereafter designated "rock" lots.

Q. How did the board figure that lots in the second district
[rock lots] were benefited $245, and the lots in the first dis-
trict [earth lots] $79, by the same improvement? A. The board
were advised by the city attorney that the court had held with
reference to one of their assessments that the cost of the excava-
tion must be charged to the lots particularly benefited by it, and
that if any part of the excavation was not necessary to the ob-
taining of the sewer or building the sewer for any lot, these lots
should not be charged for such part of the excavation. Q.
Then the lots in the second section [rock lots]—the cost of the
sewer in front of the lots in the second section were divided
equally among those lots? A. I think it was equally. The orig-
inal assessment roll shows. Q. It was made higher in those
blocks because the cost was—? A. Yes. Q. According to the
engineer's estimate? A. Yes, sir. Q. On the second section?
A. Yes. Q. Not because the benefits to these lots were any·
greater? A. No. Q. What was the reason actuating the
board in making two sections of this assessment area? A. To
comply with the instructions of the court in making sewer as-
sessments. * * * Q. Are you familiar with the lay of the
land out there along South street? A. No. * * *

Q. (by city attorney). You may state whether or not, in the
judgment of the board, all of these—each of these—lots was
benefited to at least the amount of the highest assessment. A.
In the judgment of the board they were. * * * Q. You
may state whether or not, on account of the absolute cost being
limited to $79.95 in the lots between Nineteenth and Twenty-
First [avenues,] the board reduced the amount of benefits to the
amount of the cost as to those lots? A. They did. Q. And the
board, in dividing this work at the manhole at Twenty-First
avenue, did it on account of the rock in the section east of that
manhole and comparatively little or none west of it—is that right?

A. Yes.   Q. And that action was taken on account of the setting
aside of an assessment by this court in a case in which the board
assessed in a similar improvement the cost divided proportionate-
ly against each of the lots in the entire improvement?   A. It
was.   *   *   *

Q. (by counsel for appellant).   I would like you to restate
the proposition, explaining how you assessed one lot for this im-
provement $79.95 and one adjoining it for the same improvement
$245.55.   A. He [city engineer] followed the instructions of the
board of public works.   Q. What were those instructions?   A.
That all of those items of the cost that were applicable to all
property between both ends of the sewer should be assessed
against all the property benefited by the sewer.   But the division
was made at the point where the rock began, and the entire cost
of it was charged to the property lying east of the point where
the rock began.   Q. The entire cost of it—of what?   A. Of the
rock excavation.   Q. How did they figure that they conformed
to levying the assessment according to the benefits?   In other
words, did the board find that the lot against which the levy
of $245.55 was made was benefited more than the lot against
which $79.95 was levied?   A. No, they did not.

Q. (by city attorney).   Was lot 12, block 24, assessed at $79.95,
benefited by the construction of this sewer as much as lot 14,
block 25, which is assessed at $245.55?   A. Yes.

Q. (by counsel for appellant).   It was the judgment of the
board of public works that these various lots—all of the lots
assessed—were equally benefited by the improvement?   A. Yes.
*   *   *   Q. Did the board of public works, in assessing prop-
erty for the cost of this improvement, assess it according to
benefits?   A. So far as they were free to do so.   Q. How far
were they limited in that respect?—in the particulars which
you have described about the rock cut?   A. Yes, sir.

The above is all of the evidence bearing upon the assessment, the man-
ner in which it was made, and the principle adopted by the board.   It
appears from this evidence that the cost of putting in the sewer in front
of the sixteen earth lots west of Twenty-First avenue was divided equal-

ly between those lots, six per cent. being added for engineering expenses, and that the cost of excavating the sewer in front of the eleven rock lots east of Twenty-First avenue was likewise divided equally between those lots. Did the board levy the assessment upon the lots, respectively, according to the benefits, or did they levy the assessment arbitrarily upon the two classes, according to the cost incurred in front of them?

The subject of assessment for local improvements in the city of Duluth is a very serious one, because of the irregular formation of the land and the presence of extensive ledges of rock. There are many very interesting and difficult questions connected with the laying out of sewerage systems and making assessments so that the same shall not be oppressive upon any particular class of property.

Some of the questions suggested at the argument will be for the consideration of the trial court when properly presented, but cannot be considered upon this record: Whether the rule said to have been adopted by the court in a previous case in the city of Duluth is a correct one, namely, that, where earth lots have no outlet except through a ledge of rock between them and the outlet, they should bear a reasonable portion of the burden of removing the obstruction; whether, in making such an improvement as is involved in this case, those lots which are unfavorably situated by reason of the presence of rock should bear the entire burden of removing such obstruction; and whether the plan or system of sewerage adopted is oppressive and of such a nature that the burden cannot be laid upon all the property involved without resulting in the confiscation of some part thereof. A case might be presented where the board of public works would find it necessary to make the lots more favorably situated carry a part of the burden of removing the obstruction from lots less favorably situated. A further question is whether other lots upon cross-streets, or lots located farther to the east in the improvement now under consideration, might properly have been added to the sewerage system by contemplating an extension of it at some future time, and accordingly be assessed to some extent for the benefits of having the system partially constructed by the present improvement. These are difficult questions and call for a careful investigation by the proper boards and officers of the city, in order that the

burden of such improvements may be equitably distributed, but they cannot be considered upon this record.

In this case the clerk of the board testified positively that all of the lots were benefited by this system in a like degree, and, further, that they were all benefited to the extent of the amount levied against the rock lots, $245.55 each; but the witness said, in order to conform to the directions of the board, the city engineer divided the entire improvement into two sections, and that such division was rendered necessary by reason of the increased cost of putting in a sewer in front of the rock lots. The result was that although all of the twenty-seven lots were equally benefited to the extent of $245.55, yet only the rock lots were assessed in that amount, and the earth lots were assessed $165.60 less than the amount of the benefit conferred upon each, respectively.

The general rule is that the conclusion of the board of public works upon the question of benefits will be accepted as final, unless it appears that the members failed to exercise their judgment, or unless it appears that the board acted upon an arbitrary and inflexible rule. State v. Judges of District Court, 51 Minn. 539, 53 N. W. 800, 55 N. W. 122; State v. District Court of Ramsey County, 95 Minn. 503, 104 N. W. 553. The charter requires the cost of the improvement to be defrayed by an assessment upon the real estate benefited in proportion to such benefits. It is not sufficient that the assessment levied upon the respective lots shall not exceed the amount of the benefits. Although the charter states that the expense of the improvement shall be assessed in proportion to the benefits, the cost might exceed the benefits. In no event can property be assessed in excess of the cost thereof, nor in excess of the benefits, but all property must be assessed according to the benefits.

A wrong principle was adopted in this case; for, if all of the lots were benefited to the extent of $245.55, it by no means follows that the rock lots must bear the highest sum simply because it cost that amount to construct the sewer in front of them, and that the earth lots should escape the highest amount simply because the cost in front of them was only $79.95. If all of the lots were equally benefited, or were benefited in the sum of $245.55 each, then the entire cost should have been apportioned equally between all.

Judgment reversed.