# IN RE ASSESSMENT OF BENEFITS FROM CHANGING GRADE, PAVING AND IMPROVING ROBERT AND OTHER STREETS, ST. PAUL.[1]

June 26, 1925.

No. 24,702.

**Property benefited by extraordinary street improvement may be assessed.**

1. Where an extraordinary street improvement involves a change of grade and width of the street, the necessary destruction of existing improvements, and the reconstruction or replacement of improvements such as paving, curbing, sidewalks and the like, the project must be considered as entire and indivisible, so that the items making up the same cannot be assessed to abutting property as the ordinary paving, watermain or sewer constructions are assessed, but may be assessed to all property benefited.

**No modification of assessment when it does not exceed benefit conferred by improvement.**

2. In such a case an assessment will not be disturbed by showing that one or more items do not benefit the property assessed if the improvement taken as a whole confers benefit equal to or in excess of the assessment.

**On theory improvement was entirety, council had authority to order each item objected to.**

3. Under the theory that the improvement involved was an entirety, each of the items to which objection is taken was proper to the completion of the work, and the council had authority to order the same.

**Evidence insufficient to prove assessment was levied on wrong principle or was greater than benefits.**

4. It does not appear that the assessment was levied upon a wrong principle of law, nor does it appear that appellants' properties were benefited less than the amounts for which they were assessed.

1. See Municipal Corporations, 28 Cyc. p. 1124 (Anno).
2. See Municipal Corporations, 28 Cyc. p. 1124 (Anno.)
3. See Municipal Corporations, 28 Cyc. p. 1153.
4. See Municipal Corporations, 28 Cyc. pp. 1156, 1168.

[1]Reported in 204 N. W. 558.

In the above entitled matter certain property owners filed objections in the district court for Ramsey county. Upon application of the city for judgment in the assessment proceeding, answers of the objectors were filed and a trial of the issues was had before Bechhoefer, J., who confirmed the assessments except with certain specific exceptions. Objectors appealed from an order denying their motion for a new trial. Affirmed.

*T. C. Fitzpatrick, Wm. F. Hunt, B. H. Schriber, James Schoonmaker, Paul Bremer, Boyeson, Otis & Brill, F. H. Ewing, Oliver Wondra, Lightner & Young, Douglas, Kennedy & Kennedy, W. W. Cutler* and *R. A. Walsh,* for appellants.

*Arthur A. Stewart* and *Eugene M. O'Neill,* for respondent.

HOLT, J.

The appeal is from an order denying a new trial after the court affirmed an assessment for benefits against appellants, made by the common council of the city of St. Paul for the improvement which, for short, may be called the changing of the grade of University avenue and Robert street from Capitol boulevard to Central avenue. By another proceeding, and in contemplation of this improvement, the city had acquired the necessary ground for slopes and additional ground to the south of the intersection of University avenue and Robert street to make an easy curve, and a wide paved space into which opens also Aurora avenue and Sherburne.

Before this improvement, University avenue was narrow east of Park avenue and so was Robert street north of Central avenue. The grade from Central avenue was steep, very much so going west up to Cedar street. At the latter point the grade was depressed more than 25 feet, gradually lessening in either direction therefrom. An improvement of this sort required the destruction or change of many existing street improvements, the building of slopes and retaining walls of magnitude, carrying Cedar street over University avenue by a concrete bridge, lowering and relaying sewers and watermains, repaving, new sidewalks, new curbing, the changing of the grade of Aurora avenue to meet the new grade on

Robert street and new curb on Aurora, the restoring of the boulevards of abutting property and planting of trees thereon where good ones had to be cut down, and the erection of ornamental lights to correspond with those west and south of the changed grade. The magnitude of the undertaking is appreciated from the fact that the total cost was nearly $195,000. The distance where change of grade and width of street was made, was 2,706 feet on University avenue and Robert street, and the distance on said streets to which nonabutting property was subjected to assessment for benefits is 7,976 feet. The improvement makes a uniform, wide driveway from the east city limits of Minneapolis through St. Paul over Robert street bridge to South St. Paul, whereas before it was narrow from Capitol boulevard to Central Avenue, with a grade between the latter and Cedar street too steep for general use. Appellants' properties are all situated, as we understand, south of Central avenue, where assessments were spread 150 feet on each side of Robert street clear to the bridge, the peak of the assessment being at seventh street and gradually diminishing therefrom in each direction.

Appellants concede the city council to have power to change the grade and width of a street and assess the cost to benefited property, and that such benefited property need not be abutting. But the contention is that the council cannot assess except to the extent and in the manner provided by the charter; and, inasmuch as to many of the items going into the cost of this improvement, the charter is specific that the cost thereof is to be met by abutting property or the general revenues of the city, no part thereof could properly fall on appellants nonabutting properties. This is claimed particularly in respect to paving, curbs, sewers, watermains, tree planting, boulevarding and ornamental lighting. Since the paving constitutes by far the largest item, the cost amounting to about $70,000, and since the limitation, if one there be, is most confidently asserted as to that, an affirmance or reversal of the order may turn on whether under the charter, as it now reads, nonabutting property can be assessed for the cost of the improvement insofar as the cost of paving is included therein.

Before section 235 of the city charter of St. Paul was amended in 1920 it read: "The cost of any one or more of the improvements aforesaid shall be borne, met, and paid for by the levy of an assessment or assessments therefor upon the property deemed benefited thereby. And any two or more of the improvements aforesaid may be made at the same time and part of the same proceeding, and the assessments therefor likewise levied and collected. Provided, however, that nothing herein shall prevent the council from appropriating sufficient money from the general funds of said city to pay the cost of any improvement of street intersections and crosswalks therefor." Thereunder the practice was to spread the cost of paving highways to nonabutting benefited property. State v. District Court, 95 Minn. 70, 103 N. W. 744. The amendment of 1920 added to the section this proviso: "Provided further, that the amount which may be assessed against abutting property for paving any street, boulevard, parkway or other highway shall not exceed the cost of a strip of such pavement twelve feet wide adjacent to the property thus assessed. The cost of the pavement, over and above the amount assessed against all property benefited, shall be paid out of city revenue or from money raised by bond issue or both. Where a permanent pavement has once been laid and paid for, in whole or in part, by special assessment, such benefited property shall not again for a period of fifteen years be assessed for repavement or for repairing pavement."

The city's position is that no change in the existing law was intended other than to limit the amount which can be assessed against abutting property, else why the language "The cost of the pavement, over and above the *amount assessed against all property benefited* [italicized by us] shall be paid out of city revenue." Appellants contend that so construing the effect of the amendment permits an unlimited burden for pavement to be placed upon property by indirection. For example, within the 15-year period most of appellants have paid for paving on Robert street when it was widened to Central avenue, and the properties of those abutting Robert street near Seventh street are now assessed for pavement

laid·many blocks away computed at an amount greatly in excess of the cost of a 12-foot strip in front of such properties.

A supposed case is stated of two successive paving propositions of an entire street having an excessively wide roadway. The first proceeding involves half the length of the street wherein the abutting owners pay for a 12-foot strip in front of their properties and the balance is assessed as benefits to the owners fronting the unpaved part of the street; and then, the second proceeding, for paving the other half, the abutting properties thereon pay the cost of a 12-foot strip and the properties abutting the half first paved are assessed the balance. The result is the entire street is paved wholly at the cost of the abutting properties, no matter how wide the paved roadway.

The amendment really accomplished nothing if that may be done. However, it was given effect in In re Paving of Lincoln Avenue, 155 Minn. 171, 193 N. W. 116, and was held to relieve abutting property from paying for pavements in excess of the cost of a 12-foot strip and to charge the balance to the general revenue fund of the city. But the decision is said to be obiter to the extent that the inference may be drawn that nonabutting properties may not be assessed, for only abutting objectors were involved. We do not so regard it. Where there is the ordinary paving proposition in the usual improvements of streets, or such a proposition is combined with other local improvements conveniently made at the same time, such as water and sewer connections, the limitations in the last proviso of section 235 should apply. Paving, sidewalks, curbing and to a certain extent watermains and sewers are regarded as local improvements of the properties immediately abutting which may be assessed for the cost to the extent and in the manner specified in the charter.

Was this the ordinary paving undertaking? We think not. Nor was it one combined with the ordinary installation of sewers, watermains, sidewalks or street lighting. It was a radical change of the grade and width of parts of streets where existed adequate watermains, sewers, curbs, sidewalks, boulevards, trees, street lighting

and, to a certain extent, paving for that locality. The change of grade required a destruction and removal of all existing improvements of that sort and a reconstruction to conform to the new grade and width. This improvement could not have been called for by the needs of the abutting properties, for to most ordinary observers such properties were damaged instead of benefited. It was more in the nature of the one involved in State v. District Court of Ramsey County, 33 Minn. 295, 23 N. W. 222.

That the council had authority so to change the street and reconstruct the improvements thereon cannot be denied, and is not. The question is whether, after abutting property had been assessed for benefits, having particularly now in mind the paving, the rest could be spread upon nonabutting benefited property or must be provided for by bond issue or the general revenue. Appellants' contention is that the proceedings of the council leading up to the 1920 amendment of section 235 indicate a plain purpose to throw all excess of a paving above the 12-foot strip in front of abutting property upon the general taxpayers. As before stated, this may be taken as true as to the ordinary paving proposition, but not to such a change as requires the destruction of all existing betterments, and the reconstruction of others. In such a case the paving becomes but one of the incidents or items making up one entire indivisible improvement constituting an extraordinary street change. In assessing benefits to abutting property, no doubt regard may be had to the destroyed improvements and to those restored or improved. But, when it comes to assessing the cost as a whole to benefited property, it will not do to consider any one part of the undertaking as a separate improvement. Where the ordinary local street improvements are combined in one proceeding, the rule as to assessing benefits as if each were a separate proceeding is undoubtedly sound as approved in Southern Ry. Co. v. City of Huntingburg, 81 Ind. App. 279, 143 N. E. 294, cited by appellants. But the one before us cannot be so viewed, and in assessing benefits the new paving entering into it must be considered part of the whole and not separate.

Neither will it do, where the improvement constitutes an entire, single project, to eliminate therefrom the cost of items which can be shown to confer no special benefit upon the property assessed. Appellants contend that the Cedar street bridge with pavement thereon, representing a cost of about $37,000, tends to divert from rather than conduct traffic to Robert street, and hence is a detriment rather than a benefit to their property. But the improvement could not well have been undertaken without either a bridge for Cedar street or a tunnel for University avenue at their intersection.

The final test must be whether the improvement, as an entirety, benefits the property sought to be assessed in an amount at least equal to the assessment levied. That some part of the improvement does not benefit assessed property, is of no significance so long as such property is benefited, by the entire improvement, in an amount equal to or greater than the assessment against it. City of Chicago v. Farwell, 284 Ill. 491, 120 N. E. 521.

Complaint is also made because the cost of a new sewer, discharging into one at Jackson street, is included in the assessment. The change of grade necessitated a change in the flow of sewage and surface drainage, so that the former outlet of that west of Cedar street had to be directed in opposite channels toward the east. The old sewers and watermains with connections were left high in the air. The new sewer laid towards Jackson street created no new facility needed by abutting property owners. Both that and the watermains in question were replacements, and a necessary part and parcel of the whole project.

Of course, an assessment which includes the cost of unauthorized items cannot stand. It is asserted that such are the curb on Aurora avenue and the retaining wall and stairway giving passage to pedestrians from University avenue to Cedar street. The grade of Aurora avenue had to be changed to meet that of Robert street. That of course necessitated the destruction of the old and the relaying of new curbs on Aurora avenue. The order provides for the relaying and reconstruction of curbs where needed, and the grading down of Aurora avenue was included therein. The order of

the council, after enumerating with great detail the component parts of the work to be constructed, continues, "and any other work incidental to carrying out the above improvements," and concludes, "the Commissioner of Public Works be and is hereby instructed and directed to prepare plans and specifications for said improvement, and submit same to the council for approval; that, upon said approval, the proper city officials are hereby authorized and directed to proceed with the making of said improvement in accordance therewith." We are not advised from the printed record that this stairway and retaining wall are not called for by the plans and specifications approved by the city council. This affords the only means of direct passage for pedestrians between Cedar street and University avenue, and, as far as possible, preserves a connection between them at their intersection. We cannot hold that the council had no power to make this passage a part of the improvement.

The cost of ornamental lights installed was $8,954, of which $6,667.20 was charged to abutting property. The method of assessing the difference of $2,286.80 to nonabutting, benefited properties may be somewhat dubious; but, considering the improvement as a whole, ornamental lights may be regarded as a necessary component. They made the thoroughfare correspond in appearance with the lighting system on University avenue and Robert street. To assess the whole cost thereof to abutting property seems to be out of question, for, as it appears, considerable thereof was not to be benefited at all by the whole project and the trial court so found and set aside the entire assessment thereon. As to other portions, the assessments were remitted to the council for revision, being held excessive. We think appellants have no just cause to complain of the inclusion of the small balance of the cost of ornamental lighting in the total assessment.

There is no need of referring to the restoration of sidewalks, boulevards and trees destroyed in carrying out the improvement, for if the council proceeded upon a right principle of law as to the items before considered it surely did as to these.

No doubt, the putting through of costly and extraordinary improvements of this sort creates perplexities for all concerned. They are not local in the sense of betterments to abutting property only. They may be even damaging to such and the nearest thereto, and confer the most substantial benefits upon lands quite remote. If such be the case, it is readily seen that if the owners of the latter have power and influence they may easily put through a project to benefit their own possessions at the expense of the general public, unless there still remains the right to assess property specifically benefited by extraordinary improvements or changes in streets. Again in a case of this sort to be paid for by benefited property, the authorities having power to order it are prone to overestimate benefits, with the result that the line between lawful assessment and confiscation is passed, a matter not easy for courts to detect or remedy. The apportionment of assessments upon property benefited is a legislative function with which courts will not interfere unless a clear abuse appears. Hughes v. Farnsworth, 137 Minn. 295, 163 N. W. 525. We do not think abuse of the function appears as to appellants. That the peak of the benefits was fixed upon property enjoying the greatest retail advantages on Robert street seems a reasonable determination.

In arriving at the conclusion that the order of the trial court should be affirmed, we have not lost sight of the sound legal principles stated in such cases as Sewall v. City of St. Paul, 20 Minn. 459 (511); State v. District Court of Ramsey County, 29 Minn. 62, 11 N. W. 133; and Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443, cited by appellants.

The order is affirmed.

## ON PETITION FOR REARGUMENT.

On July 17, 1925, the following opinion was filed:

In the opinion filed a mistatement of facts occurs in the following two sentences: "To assess the whole cost thereof to abutting property seems to be out of question, for, as it appears, considerable

thereof was not to be benefited at all by the whole project, and the trial court so found and set aside the entire assessment thereon. As to other portions the assessments were remitted to the council for revision, being held excessive." The writer had in mind the "Merriam Homestead" as being held not benefited. The court, however, found that the assessments made as to that property and other abutting property were excessive and could not stand.

The misstatement made does not affect the decision though it weakens the suggestion drawn therefrom. The fact remains that as made the assessments on a great amount of abutting property were excessive and could not stand. The petition is denied.