QUALITY HOMES, INC., AND ANOTHER v.
VILLAGE OF NEW BRIGHTON.

183 N. W. (2d) 555.

February 5, 1971—No. 42367.

*Dorsey, Marquart, Windhorst, West & Halladay, Edward J. Schwartzbauer, Thomas S. Hay,* and *Robert A. Heiberg,* for appellants.

*Perry W. Copeland,* for respondent.

PETERSON, JUSTICE.

Quality Homes, Inc., and New Brighton Development Corporation appeal from a judgment confirming special assessments levied against their property by respondent, village of New Brighton, for sanitary sewer and water improvements.

Three questions are presented by this appeal: (1) In assessing property for the cost of a trunk sewer designed eventually to serve an entire drainage district, may a municipality assess the entire cost of the trunk sewer to only those properties in the district which are immediately taken into the sewer system? (2) May a municipality combine several local improvement projects of a particular type, constructed in separate parts of the munici-

pality and having substantial differences in cost, and treat the several projects as one single improvement for assessment purposes? (3) May a municipality combine improvements constructed in one year with improvements constructed in another year for assessment purposes? The trial court answered all three questions in the affirmative.

The facts are not in dispute. Appellant New Brighton Development Corporation is a corporation engaged in the business of acquiring, improving, and selling real estate. Appellant Quality Homes, Inc., is a corporation engaged in the business of purchasing improved real estate and constructing and selling homes thereon. New Brighton Development Corporation developed certain land in New Brighton, subsequently platted as Apache Hills First, Second, and Third Additions. The land was then improved and offered for sale as homesites by Quality Homes, Inc., which constructed homes on the lots sold.

The special assessments in issue were imposed upon appellants' property for certain local improvements made in various parts of the village in 1963 and 1964. The improvement projects were located in widely separated parts of the village and did not directly serve all the properties assessed. Some projects included sanitary sewers, water mains, streets, and storm sewer; others included only some of these improvements. The village council, in its preliminary deliberations in each year, directed the consulting engineer to prepare separate feasibility reports describing the type, location, feasibility, and estimated cost of each project. At the subsequent improvement hearings the projects in each year were considered separately, and a separate resolution was passed with respect to each project. The 1963 projects were covered by one unit-price construction contract, and the 1964 projects were similarly covered by one unit-price contract.

In the past, according to the village engineer, New Brighton's special assessment policy was to take the total cost of a given kind of improvement, such as sewer, incurred in a given year,

and to spread that cost, after deducting a flat "connection charge" for each connection made, on a front-foot basis against each assessable front foot of property abutting on such an improvement. In this case, however, the council grouped two of the 1964 projects with the 1963 projects, so that in one group, Group A, were Improvements Nos. 64-5 and 64-18 along with Improvment No. 63-10, Projects 1, 2, 4, 5, 6, 10, and 12.

The lots of appellants which were assessed are part of the area included in Improvement No. 63-10-1 and Improvement No. 64-5. Improvement No. 64-5 included lateral sewer and water installations. Project 63-10-1 included not only lateral sewer and water installations to serve the property abutting on the project, but also an 18-inch trunk sewer project designed to serve eventually property not then abutting on the project as well as abutting property. In designing and sizing the trunk sewer, respondent forecast the use to be made of that trunk sewer by all of the areas eventually to be served by it.

The various projects, as stated, were located in widely scattered parts of the village. For the most part the various projects were not functionally interdependent. The water service in Project 63-10-4 did improve the quality of water service provided for Apache Hills First and Second. The trunk sewer and water included in Project 63-10-1 served a large area which included Apache Hills First. There was a functional relationship between Projects 63-10-1 and Improvement No. 64-5 in that the latter was hooked up to the former, but there was no functional relationship between Improvement No. 64-5 and other 1963 or 1964 projects. None of the other water or sanitary sewer projects constructed in 1963 or 1964 was necessary to the construction or operation of the water or sanitary sewer in Project 63-10-1.

The calculated cost per front foot and the amount of the front-foot assessment for sanitary sewer and water work in each improvement included in Group A, after deducting the connection charges, are indicated in the following table:

| IMPROVEMENT OR PROJECT | SEWER COST | SEWER ASSESS. | WATER COST | WATER ASSESS. |
|---|---|---|---|---|
| 63-10-1 (Apache Hills I included) | $ 7.575 | $ 8.19 | $ 4.38 | $ 4.32 |
| 63-10-2 | 12.84 | 8.19 | 5.815 | 4.32 |
| 63-10-4 | 12.457 | 8.19 | 4.947 | 4.32 |
| 63-10-5 | 5.515 | 8.19 | 4.713 | 4.32 |
| 63-10-6 | 7.664 | 8.19 | 4.506 | 4.32 |
| 63-10-10 | 3.96 | 8.19 | . . . | 4.32 |
| 63-10-12 | . . . | . . . | . . . | . . . |
| 64-5 (Apache Hills II) | 4.51 | 8.19 | 2.657 | 4.32 |
| 64-18 | . . . | . . | 4.68 | 4.32 |

It appears from the table that the per-foot sanitary sewer costs within Group A varied from $3.96 in Project 63-10-10 to $12.84 in Project 63-10-2. Nevertheless, each front foot of property was assessed an identical amount for sewer and an identical amount for water. The result was that the property (including Apache Hills First) included within Project 63-10-1 was assessed an amount for sewer and water which was $5,242.04 in excess of the construction cost of sewer and water in that project, and the property served by Improvement No. 64-5 (Apache Hills Second) was assessed for sewer and water an amount which was $43,539.84 in excess of the construction cost of the improvements serving that property.

Also, the assessment method used resulted in assessing appellants' property for the cost of an improvement which served only other property. Project 63-10-2, where costs were $12.84 per foot, did not serve any of the Apache Hills additions. Part of the cost of Project 63-10-12 was also assessed against plaintiffs' property. No part of the cost of this project, which did not serve plaintiffs' property, was assessed to the property actually being served by it. Finally, grouping two 1964 improvements with the

1963 projects, a departure from prior assessment policy, resulted in assessment of $8.19 per foot against Apache Hills Second rather than the $6.79 per foot which would have been the amount had respondent's prior assessment policy been followed.

In spreading the assessment on a front-foot basis, the village did not differentiate between the cost of trunk lines designed to serve a large area and lateral lines designed to serve particular platted streets. Even though a particular parcel would be served eventually by a trunk, it was not assessed for that trunk if the parcel was not tied into the sewer system in the year the trunk was constructed. One development, "Windsor Green," which now contains over 200 townhouses served by the trunk sewer, was not assessed for any part of its cost, for the sole reason that it did not abut on a 1963 improvement project. Also, a disproportionately small part of the cost of the trunk sewer was assessed against "Windsor South" apartments and a trailer park, since each abuts on a 1963 project only for a short distance. This land, which was zoned for high-density use when the assessment was levied, was later developed for a very high population density and produced considerable sewage. The owners of the Windsor South apartments and the trailer park, moreover, were subsequently allowed to construct private sewers which connected to the trunk sewer. These properties, however, were never included in any further proceeding or assessed an additional amount for the trunk sewer.

We must determine whether, in the light of these undisputed facts, there was adequate support for the trial court's findings and conclusions that these assessments were uniform with respect to the same classes of property, that the method for computing and determining the assessments was not arbitrary or unreasonable, and that the assessments did not exceed the special benefits to appellants' land. In making this determination we are guided by well-established principles governing special assessments. Minn. Const. art. 9, § 1, provides:

"* * * Taxes shall be uniform upon the same class of sub-

jects, and shall be levied and collected for public purposes * * *. Provided, that the legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation * * *."

The basis for the levy of special assessments for local improvements is that the property so assessed is "specially benefited" by the improvement. As stated in State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 47, 151 N. W. 545, 547, the constitution mandates that special assessments "be uniform upon the same class of property, that they be confined to property specially benefited by the improvement, and that they do not exceed such special benefits." And, as we further stated in that case, if a special assessment exceeds the amount of special benefits to the property assessed, the assessment is, as to such excess, a taking of private property for public use without just compensation. 129 Minn. 45, 151 N. W. 547.

The general rule is that the courts will be "slow to disturb" the work of those in legislative and executive positions whose function it is to determine the existence and amount of benefits resulting from a local improvement, In re Improvement of Third Street, St. Paul, 185 Minn. 170, 172, 240 N. W. 355, 356, so that the judgment of the municipality will prevail unless demonstrably wrong. The basis for judicial review is that stated in In re Improvement of Superior Street, Duluth, 172 Minn. 554, 559, 216 N. W. 318, 320:

"An assessment regularly made in due process and under express legislative authority is prima facie valid and, in the absence of fraud, mistake or illegality, is conclusive upon the courts, except that an assessment upon property not specially benefited, or an assessment in excess of the special benefits to the property, would be the taking or confiscating of private property without compensation and would violate the state constitution and the fourteenth amendment to the federal constitution. Therefore, the questions of whether or not the property assessed receives

any special benefits, and whether or not the assessment made is greatly in excess of any special benefits received, are questions open for review by the courts."

■ We hold, reversing the trial court, that the assessment upon appellants' property for the trunk sewer was invalid because it demonstrably exceeded the special benefits of the improvement. The assessment was imposed only upon properties immediately taken into the system, wholly without regard to the fact that the trunk sewer was designed to serve, and in fact now serves, nonassessed property within the entire drainage district served by that trunk.

City of St. Paul v. Sanborn, 176 Minn. 62, 222 N. W. 522, is instructive upon this issue. There, the city assessed certain property for the construction of a trunk sewer even though the property was not tied into the sewer system. The district court found that the property did receive special benefits from the construction of the trunk sewer, but not to the extent of the assessment. The court reduced the assessment. The city appealed. This court affirmed on the ground that the district court's finding that the assessment exceeded the benefit was supported by the evidence, stating (176 Minn. 66, 222 N. W. 523):

"* * * Of course it is not necessary that the sewer or improvement should abut the particular parcel in order to subject it to assessment for benefits, so long as some benefit by way of enhanced market value inures to it. * * * Benefits are to be measured by increased market value. * * * Market value of a lot may be increased by a potential access to a trunk sewer * * *."

Respondent village, in the instant case, made no determination whether or not the nonabutting property was benefited by potential access to the trunk sewer. The assessment policy is to assess property served by the trunk only if it is tied into the sewer system in the year in which the trunk is constructed. The asserted justification for not assessing property not then tied

into the trunk is that such property will later pay for a part of all sewers, some of which may be trunk sewers, constructed in the village in the year in which such property actually ties into the trunk serving it. The rationale of this policy is that it permits the municipality to avoid making a decision as to whether, and to what extent, property not yet tied into the sewer system is specially benefited by construction of a trunk sewer which will eventually serve the property.

Our statutes, however, do not provide for the determination at a later date of the proper amount to be assessed for any particular improvement. Minn. St. 429.061, subd. 1, contemplates a determination of the proper amount of special assessment against all property benefited by a local improvement. The statute provides in part:

"* * * [T]he clerk, with the assistance of the engineer or other qualified person selected by the council, shall calculate the proper amount to be specially assessed for the improvement against *every* assessable lot, piece or parcel of land * * *." (Italics supplied.)

The actual assessment upon the property actually served may be delayed by resort to the method authorized by § 429.051, which provides in part:

"* * * To the extent that such an improvement benefits non-abutting properties which may be served by the improvement when one or more later extensions or improvements are made but which are not initially assessed therefor, the municipality may also reimburse itself by adding all or any of the portion of the cost so paid to the assessments levied for any of such later extensions or improvements, provided that notice that such additional amount will be assessed is included in the notice of hearing on the making of such extensions or improvements. The additional assessments herein authorized may be made whether or not the properties assessed were included in the area described in

the notice of hearing on the making of the original improvement."

This statute clearly does not authorize the municipality to assess abutting properties for the full cost of the trunk in the event the municipality decides to defer assessment of nonabutting property until it is tied into the system.

A basic defect in the village's methodology is in the assumption that trunk sewer improvements will be made every year, so that property not assessed for the construction of the trunk sewer which will actually serve it will eventually be assessed for some trunk sewer. We think this method inherently results in an arbitrary apportionment of the costs of trunk sewers. Of course, if no trunk sewers are constructed in the year in which the nonabutting property is finally tied into the system, that property completely escapes any assessment. There is evidence in this case that some nonabutting property in fact escaped assessment for the trunk sewer serving it, particularly the property of those owners who were permitted to construct private sewers connecting with subject trunk sewer.

The court below seemed to reason that the assessment upon appellants' property did not exceed the benefit because it had not been charged or assessed for the cost of trunk sewers installed in prior years. Had the village wished to assess appellants' property for trunk sewers constructed in prior years, it should have done so, upon proper notice, as provided in § 429.051.

■ We hold, affirming the trial court, that respondent village lawfully combined several local improvement projects of particular types, such as sewer, constructed in the same year, although in separate parts of the village, treating the several projects as one improvement for assessment purposes notwithstanding substantial differences in the per-foot costs of individual projects.

We have held, in In re Improving Robert Street, St. Paul, 164 Minn. 31, 204 N. W. 558, that an assessment will not be disturbed by showing that one or more items within a single, entire im-

provement do not benefit the property assessed if the improvement, taken as a whole, confers special benefits equal to or in excess of the assessment.

The question of when several improvements may be combined in one proceeding as a single, entire improvement for assessment purposes has been given varied answers in our cases. A strict rule was applied in the early case of Mayall v. City of St. Paul, 30 Minn. 294, 15 N. W. 170. More recent cases, however, have greatly relaxed the early rule.

In In re Improvement of Lake of the Isles Park, 152 Minn. 29, 188 N. W. 54, the issue arose in the assessment for construction of the parkway around Lake of the Isles and Lake Calhoun, two Minneapolis lakes which are connected by a lagoon. We there sustained the municipality's determination that construction of the parkway around the lakes constituted a single, continuous improvement since there was a natural relationship between all portions of these parks and parkways.

City of Duluth v. Davidson, 97 Minn. 378, 107 N. W. 151, is more in point. There, the cost of construction within the improvement project varied by reason of differing topographical conditions, construction in some of the area involving digging into rock. This court held that, because each lot in that area benefited equally from the single improvement, the costs *must* be apportioned equally among all the lots served. The only difference between the Duluth case and the instant case is that here the projects comprising one improvement and the lots benefited are not concentrated in one area of the municipality.

The fact that the New Brighton projects, unlike those in Duluth, were not physically connected is not alone determinative. A determination of benefit and equality does not require complete precision. Its pragmatic element is demonstrated in the common situation where two lots of varying size, with a single dwelling on each, presumably generating the same amount of sewage, are deemed equally benefited and equally assessed by use of a front-foot charge, even though the charges against them

obviously are not identical. The trial court found that all the lots
in the various New Brighton projects benefited equally and that
the improvement, taken as a whole, conferred special benefits
equal to or in excess of the assessment. The benefit of sewer and
water service, as the village engineer testified and the village
council determined, is the same to any homeowner regardless
of location.[1]

Determination of benefits and apportionment of assessments
is a legislative function. If the question of benefits and appor-
tionment is a matter upon which reasonable men may differ, the
determination by the legislative body or council must be sus-
tained. Qvale v. City of Willmar, 223 Minn. 51, 25 N. W. (2d)
699. State v. Pillsbury, 82 Minn. 359, 85 N. W. 175, upon which
appellants mainly rely, is distinguishable. There, pursuant to
provision in the Minneapolis city charter, the city council deter-
mined upon a flat assessment per lineal foot against all property
whenever a sewer was to be constructed in the street upon which
it fronted, a practice maintained for many years. At no time was
the council required to consider, nor did it consider, the question
of benefits to property served by sewers constructed in any area.
The assessment, in short, was made wholly without any regard
to the cost of sewer construction in a particular improvement
or in a particular year, in that case resulting in an assessment
of $3.00 per lineal foot when the determinable cost to the land-

---

[1] A similarity-of-projects test is illustrated in City of Springfield v.
Green, 120 Ill. 269, 11 N. E. 261. An ordinance provided for the pave-
ment of a large number of streets, the manner and materials of construc-
tion to be the same for all. There were differences in the width of the
streets, which would to that extent alter the actual costs among the
various streets. Against the attack that the ordinance embraced more
than one improvement, the court said (120 Ill. 274, 11 N. E. 262):
"* * * The similarity of the improvement proposed to be made, and
the situation of the property to be assessed, with respect to it, afford
a more satisfactory test as to whether they might all be embraced in
a common scheme as one improvement, than their actual connection
or physical contact with one another."

owner was only $1.86 per lineal foot. The assessment, in such circumstances, was deemed manifestly arbitrary.

The trial court's finding, moreover, has statutory sanction in Minn. St. 1961, § 429.021, subd. 2, which, prior to its amendment by L. 1965, c. 877, subd. 1,[2] provided:

"An improvement on two or more streets or two or more types of improvements in or on the same street or streets may be included in one proceeding and conducted as one improvement."

■  We hold, reversing the trial court, that respondent village improperly combined, for assessment purposes, improvements undertaken in 1963 with improvements undertaken in 1964. Notwithstanding the functional and geographical relationship asserted to exist among the various projects in the 2 years, they were not instituted at the same time. The 1963 projects were initiated on July 9, 1963, and the construction contract was awarded October 29, 1963. The 1964 projects were not initiated until May 12, 1964, and the contract was awarded on September 1, 1964. Asserting that the projects were more contemporaneously completed, respondent contends that the governing body could by resolution consolidate the various improvements as one pursuant to Minn. St. 435.56, which provides:

"When proceedings for any public improvement are instituted under any law authorizing the same, and all thereof are instituted to the governing body of the municipality at substantially the same dates and the governing body may by resolution determine that these various improvements, although separately instituted, can be more economically completed if consolidated and joined as one project, the governing body shall have the power by resolution to consolidate these various proceedings for these separate improvements, and after the consolidation all subse-

---

[2] Minn. St. 429.021, subd. 2, now reads: "An improvement on two or more streets or two or more types of improvements in or on the same street or streets or different streets may be included in one proceeding and conducted as one improvement."

quent proceedings shall be conducted in all respects as if the various separate proceedings had originally been instituted as one proceeding."

The statute plainly relates to the time at which projects are "instituted," not the time at which they are completed. If it were otherwise, any project, no matter when instituted, could be combined with another if the municipality waited until the last was completed, a situation not contemplated by the statute.

Reversed in part, affirmed in part.