**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1176
A14-1177**

110 Wyman, LLC, et al.,
Appellants (A14-1176),

Ruby Red Dentata, LLC, et al.,
Appellants (A14-1177),

vs.

City of Minneapolis, Minnesota,
Respondent.

**Filed March 30, 2015
Affirmed
Kirk, Judge**

Hennepin County District Court
File Nos. 27-CV-13-10936 & 27-CV-13-20065

Timothy J. Keane, Todd J. Guerrero, Kutak Rock LLP, Minneapolis, Minnesota (for appellants)

Susan L. Segal, Minneapolis City Attorney, Sarah C.S. McLaren, Robin H. Hennessy, Assistant City Attorneys, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**S Y L L A B U S**

Service charges that a city imposes under chapter 428A of the Minnesota Statutes are

not subject to the common law special-benefit standard; rather, they are subject to the

standard set forth in Minn. Stat. § 428A.02, subd. 3 (2014), that requires service charges to

be "reasonably related to the special services provided" and proportionate to the cost of providing the service.

**O P I N I O N**

**KIRK**, Judge

These consolidated appeals involve appellant-property owners' challenge to service charges that respondent-city imposed under chapter 428A of the Minnesota Statutes on property owned by the property owners. The district court granted summary judgment to the city because it concluded that the service charges were not subject to the common law special-benefit standard. Because we agree with the district court's conclusion, we affirm.

**FACTS**

Under chapter 428A of the Minnesota Statutes, a city may adopt an ordinance establishing a "special service district," which is "a defined area within the city where special services are rendered and the costs of the special services are paid from revenues collected from service charges imposed within that area." Minn. Stat. §§ 428A.01, subd. 4, .02, subd. 1 (2014). Chapter 428A does not limit what type of service a city can designate as a "special service" other than to provide that it "may not include a service that is ordinarily provided throughout the city from general fund revenues of the city unless an increased level of the service is provided in the special service district." Minn. Stat. § 428A.01, subd. 3 (2014). The chapter further provides that "[s]ervice charges may be imposed by the city within the special service district at a rate or amount sufficient to produce the revenues required to provide special services in the district." Minn. Stat. § 428A.03, subd. 1 (2014).

Chapter 428A provides several procedural safeguards for property owners within the proposed special service district. To establish a special service district, a certain percentage of the property owners that would be subject to the service charges in the special service district must file a petition requesting its establishment. Minn. Stat. § 428A.08 (2014). The city must hold a public hearing regarding the adoption of an ordinance establishing a special service district and provide notice of the hearing to the property owners in the proposed district. Minn. Stat. § 428A.02, subds. 1, 2 (2014). A property owner who will be affected by the ordinance may file a written objection and also may appeal the city's decision regarding that objection to the district court. *Id.*, subds. 4, 5 (2014). In addition, the property owners within a newly established special service district may veto the ordinance designating that area as a special service district if a certain percentage of the owners file an objection to the ordinance before its effective date. Minn. Stat. § 428A.09, subd. 2 (2014).

After the city establishes a special service district, chapter 428A provides further protection for the property owners within the district. The city must hold a public hearing before service charges may be imposed and all property owners within the special service district must be given notice of the hearing. Minn. Stat. § 428A.03, subd. 1 (2014). The notice also must include information about the proposed service charges, including the estimated cost of improvements to be paid with the service charge and the proposed amount of the charge. *Id.*

In December 2008, the Minneapolis City Council adopted an ordinance establishing a special service district in a section of respondent City of Minneapolis's downtown, called the Downtown Business Improvement Special Service District (DID). Minneapolis, Minn.,

3

Code of Ordinances (MCO) ch. 465 (2013). The ordinance classifies the special services that are provided in the DID into several different categories: (1) "clean and safe programs," which includes cleaning, trash removal, graffiti and poster removal, snow services, and security services and monitoring; (2) "marketing/promotion/special events," which includes events, websites, newsletters, coordination of street vendors, and business recruitment; (3) "physical enhancements," which includes providing landscaping services and trash receptacles; (4) "maintenance of enhanced streetscape components above city standard," which encompasses the maintenance of fixtures, sidewalks, electrical and irrigation systems, and landscaping; and (5) "management and oversight services and administrative services." MCO § 465.20(a).

In September 2012, the city council adopted a resolution imposing service charges for special and enhanced services in the DID for 2013. Appellants 110 Wyman, LLC, et al., a group of property owners in downtown Minneapolis (the 110 Wyman property owners), filed a complaint against the city challenging the service charges. The 110 Wyman property owners and the city later reached an agreement to settle the lawsuit and the city cancelled the 2013 service charges for all property owners in the DID. Pursuant to that agreement, the city re-noticed and re-assessed the properties for the 2013 service charges in accordance with chapter 428A.

In April 2013, the transportation and public works committee of the city council held a public hearing concerning readopting the service charges in the DID for 2013. The city council later passed a resolution approving the service charges. The 110 Wyman property owners filed a complaint against the city alleging that the service charges the city imposed

4

on their properties constituted an unconstitutional taking and violated chapters 428A and 429 of the Minnesota Statutes as well as their rights of equal protection and due process under the law.

In September, the transportation and public works committee of the city council held a public hearing regarding the adoption of service charges for 2014. The following month, the city council passed a resolution adopting the service charges. Appellants Ruby Red Dentata, LLC, et al., a group of downtown Minneapolis property owners (the Ruby Red Dentata property owners), which includes many of the 110 Wyman property owners, filed a complaint against the city alleging the same claims as those asserted in the 110 Wyman property owners' complaint.

The city moved for summary judgment against the 110 Wyman property owners in January 2014. A few months later, the city also moved for summary judgment against the Ruby Red Dentata property owners.

In May, the district court granted the city's motion for summary judgment against the 110 Wyman property owners because it concluded that application of the common law special-benefit standard was not required by either chapter 428A or the Minnesota Constitution. Approximately two months later, a different district court judge granted the city's motion for summary judgment against the Ruby Red Dentata property owners for the same reason. Both the 110 Wyman property owners and the Ruby Red Dentata property owners (collectively, the property owners) appealed; we consolidated their appeals.

**ISSUE**

Did the district court err by granting summary judgment to the city based on its determination that service charges that the city imposes pursuant to its establishment of a special service district under chapter 428A of the Minnesota Statutes are not subject to the special-benefit standard?

**ANALYSIS**

Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). When, as in this case, the "district court grants summary judgment after applying the law to undisputed facts, we review the legal conclusion de novo." *Westrom v. Minn. Dep't of Labor & Indus.*, 686 N.W.2d 27, 32 (Minn. 2004). We must "view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

The property owners' challenge to the 2013 and 2014 service charges is based solely on their argument that the special-benefit standard applies to the service charges that the city imposes on them because of their location within the DID. The property owners argue that the district court erred by concluding that the service charges are not subject to the special-benefit standard.

6

Under the special-benefit standard, a city may impose assessments for local improvements if: (1) the property "receive[s] a special benefit from the improvement"; (2) the assessment is "uniform upon the same class of property"; and (3) "the assessment [does] not exceed the special benefit." *Tri-State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 777 (Minn. 1980). "[I]f a special assessment exceeds the amount of special benefits to the property assessed, the assessment is, as to such excess, a taking of private property for public use without just compensation." *Quality Homes, Inc. v. Vill. of New Brighton*, 289 Minn. 274, 280, 183 N.W.2d 555, 559 (1971). A similar standard is codified in chapter 429 of the Minnesota Statutes, which addresses local improvements and special assessments. Minn. Stat. §§ 429.011-.111 (2014). Under Minn. Stat. § 429.051, "[t]he cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based on the benefits received."

Not all types of assessments that a city imposes are subject to the special-benefit standard. For example, in *Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 783 (Minn. App. 2011), this court concluded that the special-benefit standard applies to assessments collected under a city's taxing power but does not apply to assessments collected under the city's police power, which are instead subject to a reasonableness test. In *Am. Bank*, the City of Minneapolis ordered a property owner to remove an areaway, which is a below-grade area extending beneath the street, because it interfered with Hennepin County's right-of-way and a street construction project. 802 N.W.2d at 783-84. When given the choice, the property owner, a limited-liability company, chose to have the city remove the areaway and assess the cost rather than removing the areaway itself. *Id.* at

7

784. The city completed the areaway removal and assessed the cost of the removal against the property. *Id.* The property owner appealed the assessment to the district court, arguing that it exceeded the value of the benefit conferred on the property. *Id.* The district court upheld the assessment amount. *Id.*

On appeal to this court, the property owner argued that the district court erred by not applying the special-benefit standard and instead only considering the costs that the city incurred in removing the areaway. *Id.* at 785. This court first considered whether the special-benefit standard was the correct standard to apply. *Id.* In conducting that analysis, we examined the Minnesota Supreme Court's decision in *Country Joe, Inc. v. City of Eagan*, 560 N.W.2d 681, 686 (Minn. 1997), in which it "recognized that a city may collect regulatory service fees under the police power provided that the fees are not general revenue-raising measures." *Id.* at 786. We also noted that assessments collected under the police power are subject to fairness and due process protections. *Id.* As a result, this court concluded that the special-benefit standard does not apply to assessments collected under the city's police power. *Id.* at 787.

We next considered whether the assessment was imposed under the city's police power. *Id.* As part of that analysis, we reviewed the Minnesota statutes that allow cities to collect assessments to defray the costs of regulatory services and determined that those types of assessments "are not collected to raise revenue under a city's taxing power; rather, they are collected to recover unpaid regulatory service fees under a city's police power." *Id.* We further noted that the cost of removing nuisances is a regulatory service fee that is collectable by assessment and determined that the city's assessment for the areaway removal

8

was "for the removal of a nuisance and is more akin to a regulatory service fee than to a local improvement." *Id.* at 787-88. This court concluded that the city's assessment for the removal of the areaway was a regulatory service fee imposed under the city's police power, and not a revenue-raising measure imposed under the city's taxing power. *Id.* at 788. After applying the reasonableness standard, we affirmed the assessment. *Id.*

Here, the property owners argue that the service charges the city imposed in this case are distinguishable from the assessment imposed under the city's police power in *Am. Bank* for two reasons. First, they argue that in *Am. Bank* the assessed property received an actual benefit through the removal of a nuisance, whereas in this case the city has not determined whether the property owners receive any benefits from the DID services. Second, the property owners argue that the assessment in *Am. Bank* was imposed against an individual property for an isolated incident and, in contrast, the service charges in this case affect many different properties and are applied on an annual basis. Thus, the property owners contend that the service charges at issue in this case are assessments collected under the city's taxing power, requiring application of the special-benefit standard. *See id.* at 787.

The city also distinguishes *Am. Bank* from this case, but for a different reason. The city argues that *Am. Bank* is inapplicable because it addresses special assessments that were imposed by the city for the cost of removing a nuisance condition, while this case does not involve an assessment. Instead, this case involves service charges that were imposed by the city in accordance with chapter 428A.

We agree that the facts of this case are distinguishable from the facts of *Am. Bank*. In *Am. Bank*, the city assessed one property owner with the cost of removing a nuisance on its

property. *Id.* at 784. In contrast, there is no nuisance condition present in this case. And although the service charges the city imposed affect multiple property owners, they are not imposed upon the general population. Instead, the city imposed service charges on specific property owners within a defined area of the city for the enhanced city services it provided to those property owners. *See* Minn. Stat. § 428A.01, subd. 4 (defining a special service district); MCO § 465.30 (explaining that services are provided primarily to properties within the DID, not the city as a whole); *cf. Country Joe*, 560 N.W.2d at 686 (concluding that the assessment at issue was a revenue-raising measure benefiting the public in general in part because the court found it significant that the revenue collected was not earmarked for certain projects, but instead used to fund all major street construction).

However, contrary to the property owners' argument, the service charges at issue in this case do not fit within the second category of assessments discussed in *Am. Bank*—those collected to raise revenue for the city under its taxing power. *See* 802 N.W.2d at 787. There is nothing in the record to suggest that the city was motivated to impose the service charges as a general revenue-raising measure. Instead, the city ordinance specifically provides that the revenue generated by the service charges can only be used to provide special services within the DID. *See* MCO §§ 465.50 (stating that service charges shall be levied against the properties within the DID in an aggregate sum which "will equal the estimated total costs of the city in providing the services"), .80 (describing the procedure for applying a revenue surplus or deficit to the cost of next year's services). The service charges the city imposed in this case therefore are not similar to the assessments imposed under either a city's police power or taxing power that this court discussed in *Am. Bank*.

10

Rather, the service charges imposed by the city in this case are a separate category which the legislature authorized under chapter 428A.

Unlike chapter 429, chapter 428A does not include a special-benefit standard. Instead, chapter 428A provides a different test for the imposition of service charges within a special service district. Minn. Stat. § 428A.02, subd. 3, states that "[t]he city may impose service charges . . . that are *reasonably related* to the special services provided." (Emphasis added.) It further elaborates that "[c]harges for service shall be nearly as possible proportionate to the cost of furnishing the service." Minn. Stat. § 428A.02, subd. 3. This is a different standard than the special-benefit standard discussed in caselaw and chapter 429. We therefore conclude that the special-benefit standard does not apply to service charges imposed under chapter 428A, which are instead subject to the standard set forth in that chapter.[1]

Our conclusion is supported by a review of the Minnesota appellate opinions that apply the special-benefit standard. The assessments at issue in *Quality Homes* and *Tri-State Land* were imposed by each respective city under chapter 429 of the Minnesota Statutes.

---

[1] Although the property owners denied in oral argument before this court and in their briefs to this court that they are challenging the constitutionality of chapter 428A, the city argues that the property owners' argument calls into question the constitutionality of chapter 428A because, if this court accepts the property owners' argument, then the city will be unable to apply chapter 428A as the legislature intended without violating the constitution. But we need not address the city's assertion because our interpretation of the plain language of chapter 428A leads us to conclude that the common law special-benefit test does not apply to service charges imposed under the chapter. Further, even if the property owners raised a facial challenge to the constitutionality of chapter 428A, we cannot address it because the property owners did not provide notice to the Minnesota Attorney General. *See* Minn. R. Civ. App. P. 144 (requiring a party to notify the attorney general "[w]hen the constitutionality of an act of the legislature is questioned in any appellate proceeding").

*Tri-State Land*, 290 N.W.2d at 777; *Quality Homes*, 289 Minn. at 282-83, 183 N.W.2d at 560. In both cases, the supreme court cites Minn. Stat. § 429.051 as providing the city with the authority to assess properties benefited by a local improvement. *Tri-State Land*, 290 N.W.2d at 777; *Quality Homes*, 289 Minn. at 282-83, 183 N.W.2d at 560. Similarly, in *Am. Bank* this court cited Minn. Stat. § 429.051 as part of its discussion of the special-benefit standard. 802 N.W.2d at 785. In that case, this court also analyzed several other sections of chapter 429 in reaching its conclusion that the city's assessment of the cost of the removal of the areaway was a regulatory service fee imposed under its police power. *Id.* at 786-87. Specifically, this court cited Minn. Stat. § 429.101, subd. 1, in support of its observations that "Minnesota statutes permit cities to collect assessments to defray the cost of regulatory services" and "[t]he cost of removing nuisances is among the regulatory service fees collectable by assessment." *Id.* at 787.

The property owners argue that the distinction between "local improvements" and the term "service charges" that appears in chapter 428A is illusory. A "[s]pecial assessment" is defined as "[t]he assessment of a tax on property that benefits in some important way from a public improvement." *Black's Law Dictionary* 133 (9th ed. 2009). Similarly, a "local assessment" is defined as "[a] tax to pay for improvements (such as sewers and sidewalks) in a designated area, levied on property owners who will benefit from the improvements." *Id.*

The sections of chapter 428A that discuss special service districts do not use the word "assessment," but instead consistently refer to the imposition of "service charges." *See*

Minn. Stat. §§ 428A.02, subds. 3, 4, .03, subd. 1, .04, .05, .08, .10. Chapter 428A does not specifically define the term "service charges," but it explains that

> [c]harges for service shall be as nearly as possible proportionate to the cost of furnishing the service, and may be fixed on the basis of the service directly rendered, or by reference to a reasonable classification of the types of premises to which service is furnished, or on any other equitable basis.

Minn. Stat. § 428A.02, subd. 3. The description of a service charge as a charge that is directly proportionate to the cost of providing the service is markedly different from the definition of an assessment, which does not require the amount assessed to be equal to the cost of the improvement.

Further, as the city argues, applying the special-benefit standard to service charges imposed on property owners in a special service district would make chapter 428A ineffectual. The special-benefit standard requires that the special assessment not exceed the benefit to the property that is assessed. *See Quality Homes*, 289 Minn. at 280, 183 N.W.2d at 559. But it would be very difficult to measure the benefit to the property owners in the DID of the special services provided, which include services such as security, marketing and promotion, cleaning, maintenance, and administrative services. *See* MCO § 465.20(a). The only way to measure these types of services is to calculate the actual costs of providing them. This court must presume that the legislature does not intend an absurd or unreasonable result. Minn. Stat. § 645.17 (2014). Thus, we presume that the legislature intended the standard set forth in chapter 428A to apply to service charges imposed on property owners in a special service district rather than the special-benefit standard, the application of which could render the chapter ineffectual.

## D E C I S I O N

The special-benefit standard does not apply to service charges imposed on property owners under chapter 428A, which provides its own standard for imposing service charges. The district court therefore did not err by granting summary judgment to the city based on its determination that the service charges the city imposed on the property owners for 2013 and 2014 were not subject to the special-benefit standard.

**Affirmed.**